**Mike EGAN and Kathy Egan, d/b/a Express Personnel Services, and Colorado Compensation Insurance Authority, Petitioners,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE of Colorado and Kenneth D. Trumblee, Respondents.**

No. 98CA0821.

Colorado Court of Appeals, Div. II.

Nov. 13, 1998.

Rehearing Denied Dec. 10, 1998.

Colorado Compensation Insurance Authority, Curt Kriksciun, Denver, Colorado, for Petitioners.

No Appearance for Respondent Industrial Claim Appeals Office.

Katherine Allen, P.C., Katherine E. Allen, Greeley, Colorado, for Respondent Kenneth D. Trumblee.

Opinion by Judge CASEBOLT.

Mike and Kathy Egan, doing business as Express Personnel Services, and their insurer, Colorado Compensation Insurance Authority, (collectively CCIA) seek review of a final order of the Industrial Claim Appeals Office (Panel) that awarded permanent partial disability (PPD) benefits to Kenneth D. Trumblee (claimant) based on a 19% whole person impairment rating. We affirm.

Claimant sustained an industrial injury in 1993. He testified that the injury pushed his shoulder out of joint and impacted his neck.

The treating physician prescribed care for both the shoulder and neck, placed claimant at maximum medical improvement (MMI) in 1994, and, using the *American Medical Association Guides to the Evaluation of Permanent Impairment* (rev.3d ed. 1990) (AMA

Guides), assessed a 19% whole person impairment. This rating included a whole person extremity impairment of 10% and a whole person impairment for the neck of 10%. The physician expressly recommended no apportionment.

Despite this impairment rating, CCIA filed a final admission of liability admitting only for a scheduled impairment of the upper extremity. When claimant sought a hearing to contest the admission, CCIA requested the Administrative Law Judge (ALJ) to determine whether the neck condition was caused by the industrial injury.

The ALJ determined that the treating physician's impairment rating "inherently states that the cervical condition and upper extremity condition which he rated and found appropriate to rate are directly related to claimant's injuries and not to pre-existing conditions or non-industrial injuries." He further held that a medical impairment rating inherently involves the issue of causation. Further, because CCIA had failed to request a division independent medical examination (IME) to dispute the treating physician's rating, the ALJ held that §8–42–107(8)(c), C.R.S.1998, precluded him from considering causation or altering the rating.

Accordingly, CCIA was ordered to pay PPD benefits in accordance with the treating physician's 19% whole person impairment rating. The Panel affirmed.

CCIA contends that the rating process governs only the extent of the impairment but that causation remains a factual question for resolution by the ALJ, even when a division IME has not been performed. We disagree.

■ Section 8–42–107(8)(c) specifies that, once a claimant reaches MMI, the treating physician "shall determine a medical impairment rating" in accordance with the AMA Guides. Thus, the treating physician makes the initial determination of MMI and the degree of impairment. *Colorado AFL–CIO v. Donlon,* 914 P.2d 396 (Colo.App.1995).

If the rating is disputed, either party may request a division IME, and the IME physician's rating is binding unless overcome by clear and convincing evidence.

When a division IME has been requested, a hearing may not take place until the finding of the IME physician is filed with the division. *See Qual–Med, Inc. v. Industrial Claim Appeals Office,* 961 P.2d 590 (Colo. App.1998). This statutory IME process was instituted to reduce litigation over MMI and the degree of impairment. *Colorado AFL–CIO v. Donlon,* supra.

Whether a particular component of the claimant's overall medical impairment was caused by the industrial injury is an inherent part of the rating process under the AMA Guides. *See Askew v. Industrial Claim Appeals Office,* 927 P.2d 1333 (Colo.1996) (a rating of overall medical impairment necessarily includes consideration of apportionment of the impairment to other causes). Indeed, the AMA Guides specifically require the treating physician to determine the cause or causes of the claimant's overall impairment. *See* AMA Guides ch. 2.2.

■ Accordingly, it follows that the ALJ here correctly concluded that he lacked authority to determine causation, absent a division IME. Because the AMA Guides required the physician to determine the cause or causes of the claimant's medical impairment, the issue of causation was necessarily considered. Moreover, §8–42–107(8)(c) gives presumptive effect to the treating physician's determination and prohibits the ALJ from considering CCIA's "dispute" concerning that rating, including issues related to causation, unless a division IME is performed. *See Qual–Med, Inc. v. Industrial Claim Appeals Office,* supra.

It is true, as CCIA argues, that requiring the determination of the treating physician to be challenged only by a division IME essentially requires the challenging party to submit the causation question to another doctor. However, had a division IME been requested, presumably CCIA could have furnished additional information to the IME physician concerning other potential causes of claimant's impairment, and requested that physician specifically to consider other possible causes.

In addition, CCIA could still present clear and convincing evidence to challenge and overcome the causation conclusion by the

IME physician at a subsequent hearing. *See* §8–42–107(8)(c). Ultimately, therefore, the ALJ does, under this scheme, determine causation, albeit under a heightened evidentiary standard. Hence, contrary to CCIA's contention, the procedural protections attendant to the adversarial process are preserved and physicians are not necessarily the final arbiters concerning the causation of an industrial injury.

It is also correct, as CCIA argues, that this interpretation of the statutory scheme, requiring causation questions to be challenged through a division IME, applies only to injuries resulting in whole person impairment. When there is a dispute concerning causation or relatedness in a case involving only a scheduled impairment, the ALJ will continue to have jurisdiction to resolve that dispute. However, it is also much less likely that disputes concerning causation will arise when a scheduled injury is involved. Such injuries are more concrete, generally less severe, and causation is easier to ascertain. *See* §8–42–107(2), C.R.S.1998; *cf. Duran v. Industrial Claim Appeals Office,* 883 P.2d 477 (Colo. 1994).

The order of the Panel is affirmed.

Judge CRISWELL and Judge VOGT, concur.