**HUMAN RESOURCE COMPANY and Liberty Mutual Insurance Company, Petitioners,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE of the STATE OF COLORADO and Timothy Baca, Respondents.**

No. 98CA2435.

Colorado Court of Appeals, Div. III.

Aug. 5, 1999.

Law Offices of Jonathan S. Robbins, David G. Kroll, Denver, Colorado, for Petitioners.

No Appearance for Respondent The Industrial Claim Appeals Office of the State of Colorado.

Galloway & Associates, P.C., Daniel B. Galloway, Denver, Colorado, for Respondent Timothy Baca.

Opinion by Judge NEY.

Petitioners, Human Resources Company and its insurer, Liberty Mutual Insurance Co. (collectively Liberty), seek review of a final order of the Industrial Claim Appeals Office (Panel) which imposed penalties for Liberty's failure to file a timely final admission. We affirm.

After an evidentiary hearing, the Administrative Law Judge (ALJ) made the following findings.

Claimant sustained an industrial injury in 1994 that ultimately caused impairment to both knees. As a result of the knee injuries, he also suffered from depression, for which he initially received authorized treatment from Dr. Kirk Peffer.

Dr. Carl Schmeh, claimant's primary authorized treating physician, made referrals to Dr. Gregory Reichhardt and Dr. Howard J. Entin for impairment ratings of claimant's physical and psychological conditions, respectively. All three doctors were authorized level II accredited physicians.

On August 28, 1997, Dr. Reichhardt issued his report following an August 26 evaluation of the claimant and determined that claimant was at maximum medical improvement (MMI) for his right knee injury. He assessed claimant with an 11% whole person impairment and concluded his report by writing: "Any additional work related psych impairment would be combined with this." Liberty received this report on September 11, 1997.

On September 18, 1997, Dr. Schmeh issued a Physician's Report of Maximum Medical Improvement and Impairment pursuant to Dr. Reichhardt's 11% whole person impairment rating. In that report, Dr. Schmeh noted that he had referred claimant to Dr. Entin for a psychological evaluation.

On September 24, 1997, Liberty filed a final admission based only on Dr. Reichhardt's August 28 report. Liberty admitted liability for scheduled impairments of both lower extremities.

In his September 22, 1997, psychiatric impairment report, Dr. Entin diagnosed claimant with major depressive and pain disorder and concluded that he was at MMI. He assessed claimant with a 4% whole person impairment rating, apportioning 50% of the rating to the 1994 injury. This resulted in a 2% whole person psychiatric impairment rating. Liberty received this report on October 3, 1997.

On October 23, 1997, Dr. Schmeh issued a report discharging claimant with an 11% whole body impairment rating with restrictions per Dr. Reichhardt and a 4% whole person permanent psychiatric impairment rating. Liberty received this report on October 24, 1997.

Despite claimant's repeated requests for Liberty to file a whole person impairment admission of liability, Liberty failed to do so.

Consequently, claimant filed a motion for penalties pursuant to § 8–43–304(1), C.R.S. 1998. Claimant argued that Liberty had violated Department of Labor & Employment Rule IV(N)(5), 7 Code Colo. Reg. 1101–3 (Rule IV(N)(5)), when it failed to file a second admission of liability within twenty days after receiving Dr. Entin's report.

On March 16, 1998, three days before the hearing set on the issue of penalties, Liberty filed an amended final admission for whole person medical impairment based on the advice of counsel.

The ALJ determined that Rule IV(N)(5) required Liberty to file a second admission of liability for whole person medical impairment benefits or request a Division-sponsored independent medical exam (IME) within 20 days of receiving Dr. Entin's report.

Further, from the testimony of the three insurance adjusters who handled the claim, the ALJ found that Liberty had no reasonable basis for failing to file the second admission in a timely manner, and that it acted wantonly and willfully in disobeying the rule. The ALJ imposed penalties of $100 per day from October 3, 1997, until March 16, 1998, for a total of $16,200.

On review, the Panel affirmed the imposition of penalties, but reduced the period for

which the penalties were assessed. The ALJ had imposed penalties commencing October 3, 1997, the day Liberty received Dr. Entin's report. However, the Panel reasoned that under Rule IV(N)(5), Liberty had twenty days from the date it received Dr. Entin's report either to file an admission of liability or request an IME. Thus, the Panel concluded Liberty's noncompliance with the rule did not commence until October 24, 1997, and imposed penalties from October 24, 1997, through March 15, 1998, thereby reducing the penalty to $14,300. Liberty seeks review of the Panel's order.

■ Liberty contends the Panel erred in finding that it had violated Department of Labor & Employment Rule IV(N), 7 Code Colo. Reg. 1101–3 (Rule IV(N)) and, accordingly, in imposing penalties. We disagree.

Section 8–43–304(1), C.R.S.1998, authorizes the imposition of penalties in cases where an insurer unreasonably fails to carry out a duty imposed by the Director of the Division of Workers' Compensation. *See Diversified Veterans Corporate Center v. Hewuse*, 942 P.2d 1312 (Colo.App.1997).

Two subsections of Rule IV(N) are at issue here.

Rule IV(N)(5) provides as follows:

For those injuries required to be filed with the Division with dates of injury on or after July 1, 1991, and subject to Section 8–42–107(8), C.R.S., medical impairment: Within 20 days after receipt of a determination of medical impairment from an authorized level II accredited physician, or a determination by the authorized treating physician providing primary care that there is no impairment, the insurance carrier shall either: (1) file an admission of liability consistent with the physician's opinion, or (2) request a division IME on the issue of medical impairment. The requirement to file an admission or request a Division IME shall be superseded by an agreement signed by the insurance carrier and the claimant to a binding IME on the issue of permanent impairment.

Department of Labor and Employment Rule IV(N)(8), 7 Code Colo. Reg. 1101–3 (Rule IV(N)(8)), provides, in pertinent part:

For those injuries required to be filed with the Division with dates of injury on or after July 1, 1991, and subject to Section 8–42–107(2), scheduled injuries:

. . . .

b. Within 20 days after receipt of a determination of permanent impairment from an authorized level II accredited physician, or a determination by the authorized treating physician providing primary care that there is no impairment, the insurance carrier shall either: (1) file an admission of liability consistent with the physician's opinion, or (2) set the matter for hearing.

Here, the plain language of Rule IV(N)(5) and Rule IV(N)(8) establish that they create different legal responsibilities concerning the filing of admissions of liability, depending on the nature of the injuries involved. Under Rule IV(N)(8), which concerns scheduled injuries under § 8–42–107(2), C.R.S.1998, the insurance carrier is required either to file an admission or set the matter for hearing. However, under Rule IV(N)(5), which concerns non-scheduled, or whole person injuries, the insurance carrier either must file an admission of liability or apply for a Division IME.

Liberty's September 24 admission was for scheduled impairment benefits and, therefore, was filed under Rule IV(N)(8). Liberty argues that, having filed this admission, it fulfilled the requirements of Rule IV(N) and was not required to file any further admissions, even upon receipt of further information. We reject this argument.

Liberty initially received Dr. Reichhardt's disability rating for physical injuries only. However, Dr. Reichhardt's report and Dr. Schmeh's September 18 report each put Liberty on notice that a psychological non-scheduled injury might also be involved. Further, both Dr. Entin's September 22 report and Dr. Schmeh's October 23 final discharge report confirmed that a psychological impairment was a component of claimant's permanent disability.

We agree with the Panel that nothing in Rule IV(N)(8) relieved Liberty of the responsibility to comply with Rule IV(N)(5) when it

subsequently came into possession of two authorized level II accredited physicians' reports establishing that claimant had been rated with a whole person medical impairment separate from the scheduled impairment.

Furthermore, this construction of Rule IV(N)(5) and Rule IV(N)(8) is consistent with case law construing the applicable statutory provisions at §§ 8–42–107(2) and 8–42–107(8). In *Mountain City Meat Co. v. Oqueda*, 919. P.2d 246 (Colo.1996), the supreme court held that when an employee is involved in a work-related accident that results in both a scheduled injury under § 8–42–107(2) and a non-scheduled injury under § 8–42–107(8), the scheduled injury must be converted into a whole-person impairment rating and combined with the nonscheduled injury's whole person impairment rating to calculate the injured person's permanent disability benefits.

Therefore, we agree with the Panel that the provisions of Rule IV(N)(5) were triggered when Liberty received Dr. Entin's report, and Liberty was obligated to comply with the provisions of that subsection.

We are not persuaded otherwise by Liberty's argument that the Panel based its decision on a case that was not decided until after the penalties against it were assessed. Contrary to Liberty's arguments, the Panel did not base its decision on *Egan v. Industrial Claim Appeals Office*, 971 P.2d 664 (Colo.

App.1998). Rather, the Panel noted that the division's analysis in *Egan* concerning the operation of the underlying statutory scheme was consistent with its own analysis of the operation of the applicable regulations.

 Finally, we find no error in the imposition of penalties under § 8–43–304(1). The ALJ's findings and the record support a conclusion that Liberty failed to offer a reasonable factual or legal explanation for its delay in filing the second admission of liability.

As the ALJ noted, Liberty failed to provide an appropriate explanation for the actions of the three adjusters who handled this claim. And, we are not persuaded by Liberty's argument that it relied on two cases of the Panel to support its delay. Both of the cited cases are factually and legally distinguishable. Thus, the imposition of penalties was proper. *See Diversified Veterans Corporate Center v. Hewuse, supra.*

Order affirmed.

Judge MARQUEZ and Judge CASEBOLT concur.