**Diane K. DELANEY, Petitioner,**

v.

**The INDUSTRIAL CLAIM APPEALS OF-FICE of the State of Colorado, Domino's Pizza, Inc., and National Union Fire Insurance Co., Respondents.**

No. 00CA0081.

Colorado Court of Appeals,
Division V.

Sept. 14, 2000.

Rehearing Denied Oct. 19, 2000.

Certiorari Denied Sept. 4, 2001.

Worrell, Griffith, Durrett, & Jaynes, P.C., Greg S. Russi, Glenwood Springs, Colorado, for Petitioner.

No Appearance for Respondent Industrial Claim Appeals Office.

Ritsema & Lyon, P.C., Jeffrey C. Fleischner, Denver, Colorado, for Respondents Domino's Pizza, Inc., and National Union Fire Insurance Co.

Opinion by Judge VOGT.

In this workers' compensation case against Domino's Pizza, Inc., and its insurer, National Union Fire Insurance Co. (collectively, employer), Diane K. Delaney (claimant) seeks review of a final order of the Industrial Claim Appeals Office (Panel) awarding her benefits for a scheduled injury under § 8–42–107(2), C.R.S.2000, rather than for whole person impairment under § 8–42–107(8), C.R.S. 2000. We set aside the order and remand for further proceedings.

In 1996, claimant suffered an admitted industrial injury, originally diagnosed as a cervical strain. In July 1998, the treating physician placed her at maximum medical improvement (MMI) with 5% impairment of each upper extremity because of diffuse shoulder girdle myofascial pain. The physician opined that claimant suffered no impairment of the cervical spine.

After claimant applied for a hearing on her entitlement to medical and temporary disability benefits and on compensability of a second injury, employer endorsed the issue of permanent benefits. Claimant filed a timely request for a division-sponsored independent medical examination (DIME) to dispute the treating physician's extremity rating. She also moved to strike the issue of permanency, asserting that, because the DIME could not be completed by the time of the scheduled hearing, she would be unable to meet her burden of proof as to that issue. The administrative law judge (ALJ) denied the motion.

Hearings were held in December 1998 before a different ALJ. At the beginning of the first hearing, claimant again asserted that the permanency issue was not ripe because the DIME had not yet taken place. The ALJ disagreed, concluding that a DIME report was a prerequisite to a hearing on permanent disability only in cases involving non-scheduled injuries. Thereafter, based on the evidence presented at the hearing, the ALJ determined that claimant had failed to prove she sustained a non-scheduled impairment and was thus entitled only to a scheduled benefits award.

In March 1999, after the ALJ had issued a summary order but before a final order with specific findings and conclusions had been entered, claimant filed a motion asking the ALJ to consider "newly discovered evidence" consisting of the report of the DIME which had taken place in December 1998. In the report, the DIME physician disagreed with the treating physician on the issue of whether claimant had a spinal injury. He assigned a 4% whole person impairment "due to 6 months documented soft tissue injury of the cervical spine." The DIME report thus supported claimant's position that her injury was not confined to the schedule.

The ALJ agreed that the DIME report, filed December 31, 1998, was newly discovered evidence which could not have been produced at the December hearings through the exercise of reasonable diligence. However, the ALJ denied claimant's motion, finding that the DIME was neither statutorily mandated for resolution of the issue of whether she had sustained a non-scheduled impairment nor "outcome determinative" of this issue. The ALJ also noted that claimant had

been given an opportunity at the hearings to present evidence of a non-scheduled impairment but that her evidence had not persuaded him.

On review, the Panel affirmed the ALJ's orders.

Claimant contends on appeal that, under § 8–42–107(8)(c), C.R.S.2000, injured workers have an absolute right to a DIME before a hearing can be held on permanency, regardless of whether scheduled or non-scheduled injuries are involved. She argues that, because she requested a DIME, the ALJ erred in adjudicating her right to whole person impairment benefits before he received the DIME physician's report, and also erred in declining to reopen the evidence to consider the DIME report. We do not agree with claimant's statutory construction, but agree that, in the circumstances presented here, resolution of the permanency issue should have been deferred until after the DIME report was filed.

## I.

The Workers' Compensation Act classifies work-related injuries as either scheduled or non-scheduled injuries. Scheduled injuries are those listed in § 8–42–107(2). Non-scheduled injuries are those that are not listed or that are excluded from the statutory schedule. *See* §§ 8–42–107(1)(b) and 8–42–107(8), C.R.S.2000.

■ Whether a claimant's impairment falls within the schedule in § 8–4–107(2) is a question of fact for the ALJ, whose determination must be upheld on appeal if it is supported by substantial evidence. *Langton v. Rocky Mountain Health Care Corp.*, 937 P.2d 883 (Colo.App.1996).

Scheduled and non-scheduled impairments are treated differently under the Act for purposes of determining permanent disability benefits. In particular, the procedures of § 8–42–107(8)(c), which states that a DIME finding as to permanent impairment can be overcome only by clear and convincing evidence and that such finding is a prerequisite to a hearing on permanent impairment, have been recognized as applying only to non-scheduled impairments. *See Egan v. Indus-*

*trial Claim Appeals Office*, 971 P.2d 664 (Colo.App.1998).

Limiting the § 8–42–107(8)(c) procedures to non-scheduled impairments is consistent with the first sentence of § 8–42–107(8)(a), C.R.S.2000, which states: "When an injury results in permanent medical impairment not set forth in the schedule and subsection (2) of this section, the employee shall be limited to medical impairment benefits calculated as provided in this subsection (8)." In 1996, the General Assembly qualified that language by adding to § 8–42–107(8)(a) a sentence stating: "The procedures for determination of maximum medical improvement set forth in paragraph (b) of this subsection (8) shall be available in cases of injuries set forth in the schedule in subsection (2) of this section and also in cases of injuries that are not set forth in said schedule."

■ Thus, the General Assembly expressly made some of the procedures provided for in § 8–42–107(8)—namely, those related to determination of MMI—available in cases of scheduled injuries as well as non-scheduled injuries. However, it did not similarly make the procedures in § 8–42–107(8)(c)—the subsection on which claimant relies—available in cases of scheduled injuries. Thus, we decline to hold that the statute affords an absolute right to a DIME as a prerequisite to hearing in cases that clearly involve only scheduled injuries.

## II.

■ It does not necessarily follow from this, however, that claimant's entitlement to permanent benefits in this case was properly determined without consideration of the DIME report.

This is not a case in which it was undisputed that only a scheduled injury was involved. *Cf. Faulkner v. Industrial Claim Appeals Office*, 12 P.3d 844 (Colo.App.2000)(fact that DIME had been performed before hearing was inconsequential where neither party was challenging DIME physician's determination of MMI or impairment rating).

Rather, here, at the time the hearing was held, there was a legitimate dispute as to

whether claimant also had a non-scheduled impairment, and claimant had requested a DIME to challenge the treating physician's determination as to this issue. Whether claimant in fact had a non-scheduled as well as a scheduled impairment was central to determining her entitlement to permanent benefits. *See Mountain City Meat Co. v. Industrial Claim Appeals Office*, 904 P.2d 1333 (Colo.App.1995), *aff'd*, 919 P.2d 246 (Colo.1996)(when work-related accident results in both scheduled and non-scheduled injuries, scheduled injury must be converted to a whole-person impairment rating and combined with non-scheduled injury's whole person impairment rating in calculating permanent disability benefits).

In these circumstances, even though the statute did not so require, claimant should have been given the opportunity to have the DIME report considered before the permanent benefits issue was resolved or, at a minimum, to have the evidence reopened when the report became available. *See Hendricks v. Industrial Claim Appeals Office*, 809 P.2d 1076 (Colo.App.1990)(in administrative adjudications turning on questions of fact, due process requires that parties be afforded a reasonable opportunity to present evidence in support of their position); *Potomac Insurance Co. v. Industrial Commission*, 744 P.2d 765 (Colo.App.1987)(further hearing should take place, even on issue within ALJ's discretion, if evidence remains to be presented that might affect the outcome of a claim for benefits).

Considerations of due process and fairness make such a procedure particularly appropriate here inasmuch as it was employer, not claimant, who sought to have the permanency issue resolved at a time when the DIME had not yet been performed.

■ We note that, in rejecting claimant's due process argument, the Panel found it significant that she had not requested a continuance of the hearing and had resisted employer's request for a continuance. However, in her written objection to employer's request, claimant pointed out that she was currently unemployed and was "in dire need of even the small benefits to which she [was] entitled as a result of the bilateral extremity rating." In these circumstances, we do not view her objection to a continuance as precluding her from asserting a violation of her due process rights.

■ We thus conclude that where, as here, an employer endorses the issue of permanency for hearing, a legitimate dispute has been raised as to whether the claimant has a non-scheduled injury, and a DIME has been requested, resolution of the permanent impairment issue should be deferred until after the DIME report has been filed.

Accordingly, the order of the Panel is set aside and the cause is remanded with directions that the ALJ consider the DIME report in determining whether claimant has suffered any non-scheduled injury, and that he then hold such further proceedings as may be warranted, in light of that determination, on the issue of claimant's entitlement to permanent disability benefits.

Judge RULAND and Judge CASEBOLT concur.