The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 27, 2020

## 2020COA129

**No. 19CA1039, *Morris v. ICAO* — Labor and Industry — Workers' Compensation — Division-Sponsored Independent Medical Evaluation**

In this workers' compensation case, the division holds that a DIME's "findings and determinations," as contemplated by section 8-42-107.2(4)(c), do not include a DIME's recommendation to convert a scheduled impairment to a whole person impairment, and that the insurer and employer do not forfeit their right to challenge a claimant's request to convert his impairment even if the insurer and employer do not request a hearing on the issue of conversion within twenty days of the DIME report.

COLORADO COURT OF APPEALS                    **2020COA129**

Court of Appeals No. 19CA1039
Industrial Claim Appeals Office of the State of Colorado
WC No. 4-980-171

Zachary Morris,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado, Olson Heating &
Plumbing Co., and Pinnacol Assurance,

Respondents.

ORDER AFFIRMED

Division III
Opinion by JUDGE GROVE
Furman and Graham*, JJ., concur

Announced August 27, 2020

Irwin Fraley, PLLC, Roger Fraley, Jr., Centennial, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Harvey Flewelling, Denver, Colorado, for Respondents Pinnacol Assurance and
Olson Heating & Plumbing Co.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1     In this workers' compensation action, claimant, Zachary Morris, seeks review of a final order of the Industrial Claim Appeals Office (Panel), which affirmed the order of an administrative law judge (ALJ) denying and dismissing his request for whole person permanent partial disability (PPD) benefits.  We hold that the "findings and determinations" of a division sponsored independent medical examination (DIME), as contemplated by section 8-42-107.2(4)(c), C.R.S. 2019, do not include a DIME's recommendation to convert a scheduled impairment to a whole person impairment, and that the insurer and employer do not forfeit their right to challenge a claimant's request to convert his impairment even if the insurer and employer do not request a hearing on the issue of conversion within twenty days of the DIME report.  Therefore, we affirm.

## I.     Background

¶ 2     Claimant sustained an admitted work-related injury in April 2015, when he slipped on scaffolding.  He was treated for his injuries and diagnosed with a left ankle sprain.  Several months after his fall, claimant also reported pain in his lower back.  Claimant's treating physician, Dr. Albert Hattem, placed him at

maximum medical improvement (MMI) with no impairment in March 2016. Because he disagreed with the determination that he had no permanent impairment, claimant requested a DIME.

¶ 3    The DIME physician, Dr. J. Stephen Gray, agreed with Dr. Hattem that claimant reached MMI in March 2016, but assigned claimant a 14% impairment rating for his left lower extremity, which Dr. Gray noted could be converted to a 6% impairment of the whole person. Dr. Gray also recommended that claimant receive ongoing maintenance medical care.

¶ 4    In May 2017, claimant's employer, Olson Heating & Plumbing Co., and its insurer, Pinnacol Assurance (collectively, employer), filed a final admission of liability (FAL) based upon Dr. Gray's DIME report. However, employer did not admit to Dr. Gray's converted 6% whole person impairment rating or to his recommendation that claimant receive post-MMI ongoing maintenance medical care. Instead, employer admitted to the scheduled 14% permanent impairment of claimant's left leg. Claimant objected to the FAL, arguing that he was entitled to both maintenance medical care and PPD benefits calculated under Dr. Gray's recommended 6% whole person impairment rating.

¶ 5    In November 2017, the ALJ held a hearing on the issue of future maintenance medical benefits.  Although claimant raised the issue of whole person impairment benefits, the ALJ noted that, because claimant had not given employer sufficient notice of his intent to pursue that issue, employer "elected to reserve that issue for future determination."

¶ 6    In a supplemental order issued in March 2018, which superseded a previous order the ALJ had issued, the ALJ concluded that employer was not bound by the DIME physician's recommendation for future maintenance medical benefits and denied claimant's request for ongoing care.  The ALJ rejected claimant's contention that a DIME physician's opinions concerning future maintenance medical treatment are part of the "findings or determinations" referenced in section 8-42-107.2(4)(c).  Rather, the ALJ held that "the preclusive effect [of a DIME physician's opinion] is limited to determinations regarding MMI or whole person medical impairment."  The Panel affirmed the ALJ's supplemental order in early July 2018, but claimant did not seek review of that order in this court.

¶ 7     Less than a week after the Panel issued its order, claimant filed a new application for hearing, endorsing the issues of disfigurement and PPD benefits.  Specifically, claimant indicated that he sought a "whole person rating from the DIME doctor J. Stephen Gray, M.D."  In a motion for partial summary judgment, claimant argued that employer was bound by Dr. Gray's whole person impairment rating because it had not filed an application for hearing objecting to the whole person rating and had instead filed a FAL admitting to the 14% scheduled impairment.

¶ 8     In a written order denying claimant's motion, the ALJ ruled that because the conversion of a scheduled impairment to a whole person impairment rating is not one of the two areas in which a DIME opinion carries presumptive weight, employer did not have to apply for a hearing to challenge the conversion.  In particular, the ALJ ruled that because conversion from a scheduled impairment to a whole person impairment is not within the scope of a DIME's "findings or determinations" under section 8-42-107.2(4)(c), employer was not required to apply for a hearing to challenge any impairment rating conversion.  Rather, the ALJ wrote, it was claimant's

4

burden to prove, by a preponderance of the evidence, that he suffered permanent functional impairment not listed on the schedule of disabilities. The DIME's opinion on that point is not binding, but is simply one piece of evidence the ALJ will consider in evaluating whether [c]laimant met his burden. If [c]laimant proves whole person impairment, the DIME's 6% whole person rating is binding under *Leprino* [*Foods Co. v. Industrial Claim Appeals Office*, 134 P.3d 475, 482 (Colo. App. 2005)]. On the other hand, if [c]laimant fails to prove whole person impairment, the appropriate scheduled rating is a factual matter for determination under the preponderance standard.

¶ 9  The matter proceeded to hearing on three issues: (1) claimant's entitlement to whole person PPD benefits; (2) claimant's request for disfigurement benefits; and (3) employer's contention that the ALJ was precluded from considering the PPD claim. The ALJ rejected employer's issue preclusion argument but found that claimant had not shown by a preponderance of the evidence that his functional impairment extended beyond his left leg. In support of this finding, the ALJ credited the opinions of Dr. Hattem and a physician retained by employer, Dr. Mark Paz. Both physicians opined that claimant's back pain was unrelated to his left ankle sprain. Because the ALJ found that claimant's compensable functional

5

impairment was limited to the left leg, the ALJ ordered that claimant's benefits be calculated according to the schedule codified in section 8-42-107(2). The ALJ also found that although claimant demonstrated a limp at the hearing, numerous physicians "repeatedly documented normal gait." Based on these findings, the ALJ denied and dismissed claimant's request for whole person PPD and disfigurement benefits.

¶ 10 The Panel upheld the ALJ's decision, holding that it was supported by both the law and substantial evidence in the record. Claimant now appeals the denial of his request for whole person PPD benefits.

## II. Issue Preclusion

¶ 11 Before examining the merits of claimant's appeal, we address employer's contention that claimant's argument is barred by the doctrine of issue preclusion. Employer argues that the ALJ's March 2018 supplemental order denying claimant's request for post-MMI maintenance medical benefits precludes claimant's request that his impairment rating be converted from a scheduled impairment to an impairment of the whole person, as the DIME physician recommended. In the March 2018 supplemental order, the ALJ

ruled that employer was not bound by Dr. Gray's recommendation that claimant receive ongoing post-MMI maintenance medical benefits because that recommendation fell outside the scope of "findings or determinations" addressed in section 8-42-107.2(4)(c). The ALJ reasoned that the "findings or determinations" covered by section 8-42-107.2(4)(c) are limited to those DIME opinions given preclusive effect by statute — i.e., whole person impairment and MMI. The Panel agreed, concluding that "the reference in [section] 8-42-107.5(4)(c)[1] to 'findings or determinations' of the DIME report are necessarily limited to findings or determinations of MMI or permanent impairment." Claimant did not appeal this order, and employer now argues that he should be barred from seeking whole person PPD benefits under section 8-42-107.2(4)(c) by the doctrine of issue preclusion. We disagree.

### A. Law Governing Issue Preclusion

¶ 12 An issue involving the same parties may only be decided once. Under the doctrine of issue preclusion, "once a court has decided

---

[1] The Panel's reference to section 8-42-107.5 appears to be a typographical error. The rest of the Panel's order correctly cites to section 8-42-107.2(4)(c), C.R.S. 2019.

an issue necessary to its judgment, the decision will preclude

relitigation of that issue in a later action involving a party to the

first case." *People v. Tolbert*, 216 P.3d 1, 5 (Colo. App. 2007).  Issue

preclusion applies if

> (1) the issue sought to be precluded is identical
> to an issue actually determined in the prior
> proceeding; (2) the party against whom
> estoppel is asserted has been a party to or is in
> privity with a party to the prior proceeding; (3)
> there is a final judgment on the merits in the
> prior proceeding; and (4) the party against
> whom the doctrine is asserted had a full and
> fair opportunity to litigate the issue in the
> prior proceeding.

*Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47 (Colo. 2001).

"Issue preclusion applies to administrative proceedings, including

those involving workers' compensation claims." *Youngs v. Indus.*

*Claim Appeals Office*, 2012 COA 85M, ¶ 52.

¶ 13    The party seeking to preclude an issue from relitigation bears

the burden of establishing the elements of the doctrine.  *See Allen v.*

*Martin*, 203 P.3d 546, 560 (Colo. App. 2008).

¶ 14    "Issue preclusion . . . presents a question of law that we review

de novo."  *Bristol Bay Prods., LLC v. Lampack*, 2013 CO 60, ¶ 17.

## B.  The Issue Is Not Precluded

¶ 15  As employer concedes, "claimant's argument here deviates slightly from the argument he asserted previously."  At the November 2017 hearing, claimant argued that employer was bound by the DIME physician's recommendation for post-MMI maintenance medical benefits.  In contrast, in his motion for partial summary judgment filed in advance of the November 2018 hearing, claimant maintained that employer was bound by the DIME physician's whole person impairment rating.  The issues are similar, as both rely on the ALJ's interpretation of the scope of "findings or determinations" under section 8-42-107.2(4)(c), but they are not identical.  The question raised at the November 2017 hearing was whether "findings or determinations" included post-MMI maintenance medical treatment.  If so, then employer could have been bound by Dr. Gray's recommendation that claimant receive ongoing post-MMI maintenance medical benefits.

¶ 16  In contrast, in his motion for partial summary judgment, as on appeal, claimant argued that employer was bound by Dr. Gray's conversion of scheduled impairment to a nonscheduled whole person impairment because the conversion recommendation fell

within the section 8-42-107.2(4)(c)'s definition of "findings or determinations." However, "findings or determinations" could have incorporated one of Dr. Gray's recommendations but not the other; the questions necessitated separate discussion and analysis to determine whether either maintenance medical benefits or conversion fell within the purview of "findings or determinations." The issues therefore are not identical for issue preclusion purposes. Employer consequently cannot establish the first prong of the issue preclusion test. *See Sunny Acres Villa*, 25 P.3d at 47.

¶ 17    Moreover, although claimant tried to assert his claim for PPD benefits based on Dr. Gray's conversion of his scheduled impairment into a whole person impairment at the November 2017 hearing, the parties and the ALJ agreed to reserve the question for future consideration. We agree with the ALJ that, under these circumstances, the question is not precluded.

III.    DIME's Scheduled Impairment Recommendation Not Binding

¶ 18    Having determined that claimant's primary contention is not precluded, we now turn to the merits of his appeal. As he argued before both the ALJ and the Panel, claimant contends employer is bound by the DIME physician's whole person impairment rating

10

because employer did not apply for a hearing contesting it. He argues that an employer must respond to "any finding or determination of [a] DIME doctor" within twenty days or the finding or determination becomes binding. He further argues that the ALJ and the Panel misinterpreted section 8-42-107.2(4)(c) when they excluded conversion to a whole person impairment rating from "findings or determinations." We are not persuaded that either the ALJ or the Panel erred.

### A.    Law Governing Statutory Interpretation

¶ 19    It is the court's function to decide issues of law, including the interpretation of statutes. § 24-4-106(7)(d), C.R.S. 2019 ("In all cases under review, the court shall determine all questions of law and interpret the statutory and constitutional provisions involved."). When we interpret a provision of the Act, if its language is clear "we interpret the statute according to its plain and ordinary meaning." *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo. 2004). In addition, "when examining a statute's language, we give effect to every word and render none superfluous because we 'do not presume that the legislature used language idly and with no intent that meaning should be given to its language.'" *Lombard v.*

*Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008)

(quoting *Colo. Water Conservation Bd. v. Upper Gunnison River*

*Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo. 2005)).

> B.     Panel and ALJ Did Not Misinterpret Statute

¶ 20     Section 8-42-107.2(4)(c) provides as follows:

> Within twenty days after the date of the
> mailing of the division's notice that it has
> received the [D]IME's report, the insurer or
> self-insured employer shall either file its
> admission of liability pursuant to section 8-43-
> 203[, C.R.S. 2019,] or request a hearing before
> the division contesting one or more of the
> [D]IME's findings or determinations contained
> in such report.

Claimant insists that the "findings or determinations" referenced in

this subsection encompass any findings included in a DIME report.

¶ 21     The Panel concluded that the term "findings or

determinations" is limited to a DIME physician's findings

concerning MMI and whole person permanent impairment.

Consequently, the Panel ruled that employer was not bound by the

DIME physician's conversion of the 14% scheduled lower extremity

impairment to a 6% whole person impairment and could either file

a final admission or apply for a hearing.

¶ 22    We conclude that the Panel's interpretation is consistent with the statutory language and legislative intent.  First, when we consider the Workers' Compensation Act of Colorado (Act) as a whole, it becomes clear that the legislature did not intend for a DIME physician's "findings or determinations" to be unlimited in scope.  In particular, cross-references between section 8-42-107.2, which governs DIMEs, and section 8-42-107, which governs PPD benefits, illuminate the meaning and scope of "findings or determinations."  Addressing MMI, section 8-42-107(8)(b)(II) provides that "[i]f either party disputes a *determination* by an authorized treating physician on the question of whether the injured worker has or has not reached [MMI], an independent medical examiner may be selected in accordance with section 8-42-107.2."  (Emphasis added.)  Likewise, in the subsection pertaining to permanent impairment, the statute instructs that when

> there is a *determination* that permanent medical impairment has resulted from the injury, the authorized treating physician shall determine a medical impairment rating as a percentage of the whole person. . . .  If either party disputes the authorized treating physician's finding of medical impairment, . . .

13

> the parties may select an independent medical examiner in accordance with section 8-42-107.2.

§ 8-42-107(8)(c) (emphasis added). These are the only two "determinations" that the Act expressly permits a DIME physician to evaluate, and the only two references to DIME "determinations" in these two statutory sections. Conversion of a scheduled impairment to a whole person impairment is not so cross-referenced in the statutes.

¶ 23 Second, close analysis confirms that the two areas referred to in these statutes as "determinations" are those in which the Act grants a DIME presumptive effect. As has long been the case, a DIME physician's opinions concerning MMI and impairment of the whole person are binding unless overcome by clear and convincing evidence. § 8-42-107(8)(b)(III); *Meza v. Indus. Claim Appeals Office*, 2013 COA 71, ¶ 15. The Act has not granted DIME opinions presumptive weight in any other areas. Instead, the "opinions of a DIME physician have only been given presumptive effect when expressly required by the statute." *Cordova v. Indus. Claim Appeals Office*, 55 P.3d 186, 190 (Colo. App. 2002).

14

¶ 24     The Act "classifies work-related injuries as either scheduled or non-scheduled injuries.  Scheduled injuries are those listed in [section] 8-42-107(2).  Non-scheduled injuries are those that are not listed or that are excluded from the statutory schedule." *Delaney v. Indus. Claim Appeals Office*, 30 P.3d 691, 693 (Colo. App. 2000).

> [A] claimant is limited to a scheduled disability award if he or she suffers an injury or injuries described in the schedule set forth in [section] 8-42-107(2). . . .  Where a claimant suffers an injury not enumerated in [section] 8-42-107(2), the claimant is entitled to whole person impairment benefits under [section] 8-42-107(8).

*Dillard*, 121 P.3d at 304.  Nowhere in the Act is a DIME's recommendation to convert a scheduled impairment to a whole person impairment expressly granted any presumptive effect.

¶ 25     Rather, divisions of this court have long entrusted the conversion of a scheduled injury to a whole person impairment to the ALJ's discretionary authority.  *See Strauch v. PSL Swedish Healthcare Sys.*, 917 P.2d 366, 368 (Colo. App. 1996).  Whether to convert a scheduled impairment to an impairment of the whole person is, thus, a question of fact for the ALJ to decide.  *Id.*  And even though this has long been the stated standard, the legislature

has never added impairment conversions to the short list of conclusions over which a DIME's opinion carries presumptive weight, despite enacting section 8-42-107.2 two years *after Strauch* and amending the statute at least six times since. The legislature's inaction amounts to tacit approval of the case law imbuing ALJs with the discretionary authority to decide whether an impairment rating should be converted. *See City of Colorado Springs v. Powell*, 156 P.3d 461, 467 (Colo. 2007) ("We regard the General Assembly's decision not to alter the definition of 'sanitation facility' following these cases — even though it made several other amendments . . . after these decisions — as evidence of its acquiescence to the judicial construction of the terms in those opinions."); *Tompkins v. DeLeon*, 197 Colo. 569, 571, 595 P.2d 242, 243-44 (1979) ("When the legislature reenacts or amends a statute and does not change a section previously interpreted by settled judicial construction, it is presumed that it agrees with judicial construction of the statute.").

¶ 26    Nor are we persuaded by claimant's assertion that *City Market, Inc. v. Indus. Claim Appeals Office*, 68 P.3d 601 (Colo. App. 2003), counsels a different result. Even if, as claimant notes, there is a dearth of cases addressing the question he raises, *City Market* does

16

not assist us in our analysis. It is inapposite and factually distinguishable because there, unlike here, the employer took no steps to contest the DIME. Having filed neither an application for hearing nor a FAL, the employer in *City Market* was bound by the "findings or determinations" identified in the DIME opinion. *Id.* at 603 ("When employer received the DIME report, it was required under the Act and the rule to respond and either admit that the DIME report was valid or request a hearing at which it could raise its objections to the report."). Employer here admitted to the scheduled impairment recommended by the DIME; it was not required to do more because claimant bore the burden of proving he had sustained an injury to his whole person. *See Walker v. Jim Fuoco Motor Co.*, 942 P.2d 1390, 1392 (Colo. App. 1997).

¶ 27 We agree with the Panel that a DIME's "findings or determinations" under section 8-42-107.2(4)(c) do not include conversion of a scheduled impairment to a nonscheduled impairment of the whole person. Accordingly, employer was not bound by Dr. Gray's suggestion that claimant's impairment rating be converted from 14% of the lower extremity to 6% of the whole person even though it filed a FAL admitting to the scheduled

17

impairment and did not also file an application for a hearing contesting the conversion recommendation.

### C. The Panel Properly Upheld the ALJ's Finding that Claimant's Injury Fell Under the Schedule of Injuries

¶ 28 To the extent that claimant suggests that the Panel erred by affirming the ALJ's finding that his injury was limited to his lower extremity, we perceive no grounds for setting aside the order on this basis.

¶ 29 The Act draws a clear distinction between scheduled and nonscheduled — i.e., whole person — impairment. Injuries either fall within the schedule codified at section 8-42-107(2) and are described as scheduled injuries, or they fall outside the scope of the schedule or are excluded and are considered nonscheduled or whole person injuries. *See Delaney*, 30 P.3d at 693; *Dillard*, 121 P.3d at 304.

¶ 30 When a claimant has sustained a nonscheduled, whole person impairment, the DIME physician's rating of that impairment is granted presumptive weight. *See Meza,* ¶ 15. However, such presumptive weight is not granted a DIME physician's opinion with respect to scheduled injuries. *See Delaney*, 30 P.3d at 693

18

(recognizing that the requirement that "a DIME finding as to permanent impairment . . . be overcome . . . by clear and convincing evidence . . . appl[ies] only to non-scheduled impairments"). "When there is a dispute concerning causation or relatedness in a case involving only a scheduled impairment, the ALJ will continue to have jurisdiction to resolve that dispute." *Egan v. Indus. Claim Appeals Office*, 971 P.2d 664, 666 (Colo. App. 1998).

¶ 31    "[W]hether the claimant has suffered a functional impairment that is listed on the schedule of disabilities is a factual question to be resolved by the ALJ." *Strauch*, 917 P.2d at 368. In other words, whether to categorize an injury as limited to one body part enumerated on the schedule set out in section 8-42-107(2) or to rate it as an impairment of the whole person is a question of fact for the ALJ. If an ALJ determines that an injury warrants a whole person rating and should not be limited to the statutory schedule, any whole person rating calculated by the DIME physician would be granted presumptive weight. As explained in *Strauch*,

> the determination whether the claimant has
> suffered a functional impairment that is listed
> on the schedule of disabilities is a factual
> question to be resolved by the ALJ. This
> determination is distinct from, and should not

19

> be confused with, the treating physician's rating of physical impairment under the *AMA Guides*.

*Id.* (citation omitted). The claimant bears the burden of establishing entitlement to a nonscheduled, whole person impairment rating. *See Walker*, 942 P.2d at 1392 (upholding ALJ's finding that the claimant failed to prove entitlement to PPD benefits calculated based on a whole person impairment rating because finding was supported by substantial evidence).

¶ 32     "[T]he situs of the functional impairment, not the situs of the initial harm" determines whether claimant's injury falls under the schedule or should be calculated based upon an impairment of the whole person. *Strauch*, 917 P.2d at 369. Thus, the ALJ had the sole discretion to decide whether claimant met his burden of demonstrating that his injury extended beyond his leg to his back and should be calculated at the 6% whole person impairment rating as converted by the DIME physician, Dr. Gray. The ALJ found, though, that claimant had not met his burden and that his injury was limited to his left leg. Because that determination was factual and fell squarely within the ALJ's purview, the Panel had to uphold it if it was supported by substantial evidence in the record. *See*

20

*Langton v. Rocky Mountain Health Care Corp.*, 937 P.2d 883, 884 (Colo. App. 1996) (holding that the question whether a claimant's impairment falls within the schedule of benefits is one of fact for the ALJ). And, as set out in his order, the ALJ's finding was supported by the opinions of both Dr. Hattem and Dr. Paz.

¶ 33    Because substantial evidence supports the ALJ's finding that claimant's work-related injury was limited to his left lower extremity and did not extend to his back, the Panel properly upheld the ALJ's determination that claimant sustained a scheduled impairment under section 8-42-107(2). *Id.*

## IV.   Conclusion

¶ 34    The order is affirmed.

JUDGE FURMAN and JUDGE GRAHAM concur.