**CITY MARKET, INC., Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the STATE OF COLORADO and Amy Bueling, Respondents.**

No. 02CA1437.

Colorado Court of Appeals,
Div. II.

March 13, 2003.

Hoskin, Farina, Aldrich & Kampf, Frederick G. Aldrich, Grand Junction, Colorado, for Petitioner.

No Appearance for Respondent Industrial Claim Appeals Office.

The Frickey Law Firm, Jeff Francis, Lakewood, Colorado, for Respondent Amy Bueling.

Opinion by Judge CARPARELLI.

City Market, Inc., a self-insured employer (employer), seeks review of a final order of the Industrial Claim Appeals Office (Panel) awarding penalties to Amy Bueling (claimant) for employer's violation of a provision of the Workers' Compensation Act (Act) and of Department of Labor and Employment Rule IV(N)(6), 7 Code Colo. Regs. 1101–3. We affirm.

Claimant suffered a compensable injury to her left shoulder. Finding that claimant had reached maximum medical improvement (MMI), the treating physician rated a 16% upper extremity impairment, which she converted to a 10% whole person impairment. Based on this report, employer filed a final admission of liability for a 16% scheduled impairment of the left upper extremity.

Claimant filed an objection and a notice and proposal to select an independent medical examiner. She stated that she was not waiving any arguments and requested a division-sponsored independent medical examination (DIME) on the issues of both MMI and the impairment rating. In a report dated October 2000, the DIME physician agreed with the MMI date, but assigned a 35% upper extremity impairment rating, which he converted to a 21% whole person impairment rating. The DIME physician assigned a 21% "final/combined" whole person impairment rating. Employer admits that it filed neither an amended final admission of liability consistent with the DIME physician's permanent impairment rating nor an application for hearing to dispute the DIME physician's whole person impairment rating.

Consequently, claimant applied for penalties, alleging that employer's failure to file an admission or an application for hearing violated the Act and failed to obey Rule IV(N)(6). Employer countered that the treating physician's report supported a scheduled rating, not a whole person rating, and therefore, claimant was not entitled to a DIME to dispute impairment. According to employer, because claimant had no such entitlement, it had no duty to respond to the DIME report.

The administrative law judge (ALJ) found that claimant proved she suffered functional impairment to the whole person and that employer failed to overcome the DIME physician's whole person impairment rating. Accordingly, the ALJ awarded benefits based on that whole person rating. The ALJ also assessed a penalty against employer, concluding that employer's "refusal" to file a final admission or application for hearing following the issuance of the DIME report was unreasonable and constituted a violation of § 8–42–107.2, C.R.S.2002, and Rule IV(N)(6). The Panel affirmed.

I.

In 1998 the General Assembly added § 8–42–107.2(4), C.R.S.2002, to the Act and mandated that, within thirty days after the mailing of the DIME physician's report, the insurer or self-insured employer shall either file an admission of liability or request a hearing to contest the DIME report. *See*

Colo. Sess. Laws 1998, ch. 313 at 1428–29 (effective Aug. 5, 1998); *see also* Rule IV(N)(6). The General Assembly's requirement is clear: an insurer or a self-insured employer *must* respond to a DIME physician's report and elect either to admit or to contest the report.

Rule IV(N)(6) also requires a self-insured employer either to admit liability or to file an application for hearing within thirty days after the date of mailing of the DIME report determining medical impairment.

Neither the statute nor the rule contains any qualification that would limit this obligation.

## II.

■ Employer asserts that it was not obligated to respond to the DIME report because claimant was not entitled to a DIME. Employer argues that, because the treating physician described a scheduled injury rather than an injury to the whole person, claimant was not entitled to a DIME regarding the impairment rating. Employer contends that it was entitled to presume that the treating physician's finding of a scheduled impairment controlled. Based on this argument, employer asserts that its receipt of the DIME report created no obligation to file an admission or an application for a hearing. We disagree.

■ The determination whether a claimant sustained a scheduled or nonscheduled injury is a question of fact for the ALJ, not the rating physician. *See Strauch v. PSL Swedish Healthcare System,* 917 P.2d 366 (Colo.App.1996). Precisely for this reason, § 8–42–107.2(4) and Rule IV(N)(6) require employers to respond and either admit liability or initiate the process by which such questions can be addressed.

When claimant objected to employer's admission, she explicitly put employer on notice that she was challenging both the MMI determination and the impairment rating. When employer received the DIME report, it was required under the Act and the rule to respond and either admit that the DIME report was valid or request a hearing at which it could raise its objections to the

report. *See* § 8–42–107.2(4); Rule IV(N)(6). We can find no basis in the Act or the rule to conclude that, because employer was confident that the DIME examination should not have been authorized, it could ignore the mandatory response provisions of § 8–42–107.2(4) and Rule IV(N)(6) or could avoid the DIME findings until claimant initiated action to enforce them. To the contrary, employer should have requested a hearing to contest the DIME report. We, therefore, conclude that employer was obligated to respond to the DIME report notwithstanding employer's stated belief that claimant was not entitled to the DIME.

## III.

■ Employer also asserts that, because it responded to and admitted the treating physician's finding of a scheduled injury, it was not required to respond, admit, or request a hearing with regard to the DIME report's finding of a nonscheduled impairment. Essentially, employer contends that its first response to the treating physician's impairment rating satisfied § 8–42–107.2(4) and Rule IV(N)(6) and that it was entitled to rely on its conclusion that the DIME report's impairment finding was a nullity. We disagree.

Employer attempts to distinguish *Human Resource Co. v. Industrial Claim Appeals Office,* 984 P.2d 1194 (Colo.App.1999). Contrary to employer's argument, at least one aspect of the holding in *Human Resource* applies here.

There, the insurer received three medical impairment reports issued by different physicians. One report contained an impairment rating regarding the claimant's knees. The other two contained a whole person impairment arising from psychological problems. A division of this court concluded that the insurer's response to the first report did not satisfy the requirements of the rule and that the insurer was obligated to respond to each of the reports.

Here, employer admitted the treating physician's scheduled impairment rating. Claimant challenged the treating physician's findings regarding both MMI and the impairment rating. The DIME report con-

curred with the treating physician regarding MMI, but disagreed with the treating physician's impairment rating. Employer has acknowledged that the challenge to the MMI determination was proper, yet it responded to neither aspect of the DIME report. As in *Human Resource,* employer's admission of the treating physician's impairment rating did not satisfy or eliminate its statutory and regulatory obligations to respond to the DIME report. We conclude that employer was required to respond to the DIME report notwithstanding its admission of liability regarding the treating physician's scheduled impairment rating.

## IV.

■ Employer also asserts that, before imposing a penalty under the Act, the ALJ was required to find that its refusal to obey the rule and its violation of the Act were unreasonable. Employer also contends that the record is insufficient to support the ALJ's finding that employer's violation was objectively unreasonable. We conclude that there was sufficient evidence to support that finding. Consequently, we do not reach the question of whether violation of the Act and disobedience of the rule must be unreasonable before a penalty must be imposed.

Section 8–43–304(1), C.R.S.2002, states that an insurer or self-insured employer who "violates any provision" of articles 40 to 47 of title 8 "shall ... be punished by a fine of not more than five hundred dollars per day for each such offense." Section 8–43–304(1) also requires punishment when an insurer or self-insured employer "fails, neglects or refuses" to obey a lawful order of the director.

Employer admitted that it failed to respond to the DIME report. There was no evidence to the contrary. Thus, the ALJ properly found that employer failed to respond to the report.

Regardless of how strongly employer believed in its objection to the DIME report, the Act and the rule unequivocally mandated that employer file a response. Employer could have stated its objections to the DIME in that response. The ALJ considered employer's rationale for not responding to the DIME report and concluded that it was not reasonable. The ALJ found that employer violated the Act and refused to obey the rule. These findings were supported by sufficient evidence, and we are, therefore, bound by them. *See Colorado Compensation Insurance Authority v. Industrial Claim Appeals Office,* 907 P.2d 676 (Colo.App.1995).

Because the ALJ applied a test of unreasonableness and her finding was supported by sufficient evidence, we need not and do not resolve whether, before penalties are imposed, a test of unreasonableness must be applied in all cases in which an insurer or self-insured employer violates the Act or fails or refuses to obey an order or rule of the director.

## V.

■ Finally, employer argues that the ALJ could not properly impose a penalty if its conduct was predicated on a rational argument based in law or fact. We disagree.

Employer cites *Diversified Veterans Corporate Center v. Hewuse,* 942 P.2d 1312 (Colo.App.1997), to support this contention. In *Hewuse,* a division of this court applied the test of reasonableness to an insurer's failure timely to obey a rule of the Department of Labor and Employment.

The *Hewuse* division referenced *Tozer v. Scott Wetzel Services, Inc.,* 883 P.2d 496 (Colo.App.1994). In *Tozer,* the claimant alleged that the employer, through its adjuster, acted in bad faith when it appealed the ALJ's order. The division evaluated whether the appeal was frivolous. It decided that the adjuster's appeal of the ALJ's order was not frivolous because it was predicated on a rational argument based in law or fact. *Tozer, supra,* 883 P.2d at 499. Although the *Hewuse* division referenced *Tozer,* it did not apply the same standard to reach its decision.

The burden of proving that employer did not have a rational argument for failing to respond would be a higher burden than prov-

ing that employer neglected to act as a reasonable employer would have acted in response to the DIME report and the statutory and regulatory mandates. Because § 8–43–304(1) does not limit penalties to frivolous or irrational violations of the Act or disobedience of the rules and because neither *Hewuse* nor *Tozer* applied such a standard for failing to respond to a DIME report, we conclude that the ALJ was not required to apply a "rational argument" standard.

The order of the Panel is affirmed.

Judge NEY and Judge MARQUEZ concur.