LEPRINO FOODS COMPANY and Ace, U.S.A., Petitioners,

v.

INDUSTRIAL CLAIM APPEALS OF-FICE OF the STATE of Colorado and Brenda Rivera, Respondents.

No. 04CA1379.

Colorado Court of Appeals, Div. III.

Dec. 1, 2005.

Certiorari Denied May 30, 2006.*

* Justice EID does not participate.
  Justice COATS would grant as to the following issues:
  Whether a workers compensation applicant may seek temporary workers compensation benefits for time periods after she requests and receives a lump sum distribution of permanent disability benefits.

Whether a workers compensation applicant is estopped from challenging the factual basis of an employer's Final Admission of Liability, after requesting and receiving a lump sum distribution of permanent disability benefits based on that Final Admission.

Karen E. Ford, Denver, Colorado, for Petitioners.

John W. Suthers, Attorney General, Eric S. Rothaus, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Tim Guill, Denver, Colorado, for Respondent Brenda Rivera.

CASEBOLT, J.

In this workers' compensation proceeding, Leprino Foods Company and its insurer, Ace, U.S.A. (collectively employer), seek review of a final order of the Industrial Claim Appeals Office (Panel) determining that Brenda Rivera (claimant) (1) had not waived the right to a division-sponsored independent medical examination (DIME) on the issue of maximum medical improvement (MMI) by seeking and accepting a lump sum payment of permanent partial disability (PPD) benefits; (2) was not yet at MMI; and (3) was entitled to additional temporary total disability (TTD) benefits for her industrial injury and related subsequent shoulder symptoms without application of a statutory cap on benefits. We affirm the order in part and set it aside in part.

Claimant sustained an injury to her right elbow in February 2001, and employer filed a

general admission of liability admitting that the injury was compensable. An authorized treating physician (ATP) surgically repaired a tendon in May 2001. Employer accommodated the restrictions that the ATP imposed and returned claimant to work with modified duties.

In October 2001, the ATP referred claimant to another physician for an impairment rating. The rating physician issued a March 2002 report placing claimant at MMI with a twenty-seven percent impairment of the right upper extremity. Claimant was placed under permanent restrictions that precluded her from returning to her regular employment.

On April 16, 2002, an insurance adjuster prepared a final admission of liability (FAL), which admitted liability for PPD benefits based on the rating physician's extremity rating. Employer's safety supervisor testified that at a meeting on April 18, 2002, claimant asked him whether these PPD benefits could be paid in a lump sum, but because he did not know the answer, he called the adjuster, who spoke to claimant. Following that conversation, claimant sent a handwritten note dated April 18 to the adjuster stating, "I would like to receive my disability rating in one lump sum of $8,431.76."

On April 23, 2003, claimant again met with the employer's safety supervisor. Following this meeting, the supervisor terminated claimant from employment because she could not perform her regular duties and employer had no jobs available that were within her restrictions.

Thereafter, claimant retained counsel who, on April 29, filed an objection to the FAL and a notice and proposal to select a physician to conduct a DIME. Also on April 29, employer paid the lump sum claimant requested in her handwritten note, which represented the discounted and remaining balance of the admitted PPD award. These two actions—accepting PPD benefits while at the same time contesting MMI—underlie much of the controversy in this case.

Employer did not object to the request for a DIME physician. In an August 2002 report, the DIME physician opined that claimant was not yet at MMI. He made several diagnoses, including right radial nerve entrapment and "chronic right shoulder pain and decreased range of motion with evidence of possible frozen right shoulder ... due to the chronic pain and reduced usage of her right arm." The DIME physician recommended further diagnostic studies and various drug therapies.

Employer took no action on the DIME physician's report. It did not contest the DIME physician's finding on MMI or file an amended FAL for TTD benefits. Claimant then applied for a hearing, seeking TTD benefits from the date she was terminated from employment.

The administrative law judge (ALJ) found that claimant had not reached MMI and was therefore entitled to the requested TTD benefits. The ALJ further determined that employer failed either to admit or to contest liability within thirty days of the DIME physician's report. Consequently, the ALJ found that, pursuant to §§ 8–42–107.2(4) and 8–43–203(2)(b)(II), C.R.S.2005, employer was precluded from challenging the DIME physician's finding that claimant was not at MMI, including the DIME physician's findings regarding the cause of claimant's upper extremity symptoms. Alternatively, the ALJ found that employer had failed to overcome, by clear and convincing evidence, the DIME physician's determination that the claimant was not at MMI.

The ALJ also rejected employer's contention that, by accepting the lump sum payment on April 29, claimant had waived her right to request the DIME. In support, the ALJ found that claimant's April 18 note contained no statement indicating that, by accepting the lump sum payment, she intended to surrender her rights to challenge the FAL and request a DIME. Further, the ALJ found there was no written agreement establishing a waiver, and that claimant in fact challenged the FAL by filing an objection to it on April 29, together with a notice and proposal for the DIME.

The Panel agreed that, by accepting the lump sum, claimant had not waived the right to request a DIME, and that employer, through its inaction, had lost the right to

contest the DIME physician's findings. The Panel affirmed the award of TTD benefits, including compensation for the shoulder injury, and it concluded that employer had waived the statutory cap issue by failing to timely raise it, or alternatively, that application of the cap was premature because claimant had not reached MMI.

## I.

Employer first contends that the Panel erred in concluding that claimant's request for the lump sum payment of PPD benefits did not constitute a waiver of her right to contest MMI through the DIME process. Asserting that claimant is proceeding inconsistently in pursuing concurrent claims for PPD and TTD, employer argues that acceptance of lump sum PPD benefits constitutes an admission by claimant that she has reached MMI and estops her from seeking further TTD benefits. Employer further asserts that the General Assembly, in changing the statutes governing lump sum payments, did not intend to alter the effect of a lump sum as a settlement. Under the circumstances present here, we disagree.

Lump sum payments of PPD benefits less than $10,000 are authorized by § 8–42–107(8)(d), C.R.S.2005, which provides, in pertinent part, that

> [u]p to ten thousand dollars of the total amount of any such award [for medical impairment benefits] shall be automatically paid in a lump sum less the discount as calculated in section 8–43–406[, C.R.S. 2005,] upon the injured employee's written request to the employer or, if insured, to the employer's insurance carrier.

*See Cooper v. Indus. Claim Appeals Office,* 109 P.3d 1056 (Colo.App.2005)(recognizing that PPD benefits are the equivalent of medical impairment benefits).

Employer argues that the holding in *Brunetti v. Industrial Commission,* 670 P.2d 1246 (Colo.App.1983), compels the conclusion that a claimant's acceptance of a lump sum implies acceptance of a FAL and therefore constitutes a settlement or waiver of the right to challenge the FAL. We reject this argument for two reasons.

## A.

First, in *Brunetti,* the claimant failed timely to object to the FAL, the case was therefore closed, and the claimant tried to obtain additional benefits without a reopening. The claimant's acceptance of the lump sum payment was considered a "settlement" partly because the claimant was notified the claim would be considered closed if he filed no objection, the claimant did not object within the allotted time, and the claimant accepted payment under the admission.

Here, in contrast, claimant exercised her right to challenge the FAL on April 29 by objecting to it and requesting a DIME. Indeed, the FAL itself provided notice that the claim would be final *only* if she failed to object and did not request a DIME. It did not advise claimant that the claim would be final if she accepted the lump sum. *See Lobato v. Indus. Claim Appeals Office,* 105 P.3d 220 (Colo.2005)(§ 8–43–203(2)(b)(II) establishes notice requirements for a FAL); *Peregoy v. Indus. Claim Appeals Office,* 87 P.3d 261 (Colo.App.2004). Thus, as the ALJ recognized, this is not a case in which claimant, after receiving adequate notice of her rights, declined to challenge the admission and tacitly accepted a lump sum payment as a "settlement" of her claim. *See Johnson v. McDonald,* 697 P.2d 810, 811 (Colo.App.1985)(failure to contest an admission of liability containing notice of thirty-day contest period did not bar claimant from subsequently litigating issue of PPD benefits where admission and payment made was for TTD benefits; noting that contrary result would occur only where "claimant, by his conduct, tacitly agreed to accept the payments made under an admission of liability in settlement of his claim").

Accordingly, neither claimant's action in objecting to the FAL and filing a notice requesting a DIME, nor the content of her April 18 letter, reflects claimant's knowing and intelligent decision to surrender her rights to dispute the FAL and request a DIME. Furthermore, the adjuster's testimony suggests that claimant was not advised that employer would consider the acceptance of the lump sum as a surrender of all rights

to challenge the FAL. Consequently, the record fully supports the ALJ's finding that claimant's conduct does not demonstrate the kind of knowing, intelligent, and unambiguous conduct required to imply a waiver. *See Johnson v. Indus. Comm'n,* 761 P.2d 1140 (Colo.1988)(waiver is the intentional relinquishment of a known right and presents a question of fact).

### B.

Second, *Brunetti v. Industrial Commission, supra,* is inapplicable here because the law has changed. When *Brunetti* was decided, the DIME procedure did not exist, *see* Colo. Sess. Laws 1991, ch. 219, § 8–42–107(8) at 1309–11, and all lump sum requests were governed by what is now codified as § 8–43–406(1), C.R.S.2005. *See* Colo. Sess. Laws 1986, ch. 64, § 8–52–103(1) at 477. That section provides the director with discretion over lump sum awards made after notice to the parties.

With the advent of the DIME procedure, § 8–42–107(8)(d) now provides that an initial amount of up to $10,000 of an award of PPD benefits is to be automatically paid by the employer or insurer. *See* Dep't of Labor & Employment Rule XI(C)(3)(b), 7 Code Colo. Regs. 1101–3. Additional lump sums exceeding the initial amount must be considered by the director pursuant to § 8–43–406(1).

Notably, the director has provided that these additional sums may be paid only "if the claimant has indicated that the admission will be accepted as filed, relative to permanency." Dep't of Labor & Employment Rule XI(C)(3)(c), 7 Code Colo. Regs. 1101–3. The form used by the director to disburse these additional lump sum benefits clearly notifies a claimant that, by signing the application for a lump sum, the claimant accepts the FAL. An older version of the form is included in the record as an attachment to claimant's brief in opposition to the petition to review the ALJ's order, and we grant claimant's request to take judicial notice of the copy in the record, inasmuch as it was not considered by the ALJ. *See One Hour Cleaners v. Indus. Claim Appeals Office,* 914 P.2d 501 (Colo.App.1995)(judicial notice may be taken of matters of public record and of common knowledge to an interested public, including rules and regulations promulgated by a governmental agency, where the facts are generally known or capable of accurate and ready determination as required under CRE 201). The current version of the form is available at *www.coworkforce. com/dwc/FORMS/M odanddisbursemt. asp,* and it may be referenced without resort to judicial notice. *See Lobato v. Indus. Claim Appeals Office, supra,* 105 P.3d at 227 n. 4 (quoting the most recent FAL form available online and citing the website address without analysis of factors applicable to judicial notice).

Thus, the director has provided that only requests for additional lump sum payments exceeding the initial $10,000 are subject to the FAL acceptance procedure. *See Popke v. Indus. Claim Appeals Office,* 944 P.2d 677 (Colo.App.1997)(director may promulgate the rules and regulations governing administration of the Workers' Compensation Act, and, insofar as the director's interpretation is consistent with the clear language of the statute or with legislative intent, a court may not substitute its own construction of a statutory provision).

To the extent of any ambiguity in the rule, we resolve it by concluding that the inclusion of the FAL acceptance provision for an additional lump sum necessarily implies the exclusion of an acceptance provision for the initial $10,000 lump sum request. *See City of Arvada v. Colo. Intergovernmental Risk Sharing Agency,* 19 P.3d 10 (Colo.2001)(setting forth canon of construction expressio unius est exclusio alterius—the inclusion of one thing implies the exclusion of another); *Applehans v. Farmers Ins. Exch.,* 68 P.3d 594 (Colo.App.2003) (applying same canon); *see also Holliday v. Bestop, Inc.,* 23 P.3d 700 n. 5 (Colo.2001)(noting that this canon applies when interpreting ambiguous provision).

Accordingly, we reject employer's assertion that the initial lump sum distribution up to $10,000 is treated identically to any additional lump sums. Furthermore, even if, as employer suggests, claimant received a lump sum plus periodic PPD benefits totaling more than $10,000, the result is the same, because it is the amount of the lump sum payment,

not the total of a lump sum and periodic payments, that is dispositive under Rule XI(C)(3)(b) and (c), § 8–42–107(8)(d), and § 8–43–406. And we note that we are not bound by other cases decided by the Panel that appear to reach a contrary result. *See Midboe v. Indus. Claim Appeals Office,* 88 P.3d 643 (Colo.App.2003).

We recognize that the current practice of allowing claimants to request the initial lump sum without accepting the FAL is problematic, as this case illustrates. The director could amend Rule XI(C)(3)(b) to extend the FAL acceptance provision to the initial lump sum request. However, we may not impose such a requirement. *See Kraus v. Artcraft Sign Co.,* 710 P.2d 480 (Colo.1985)(court may not read a nonexistent provision into a statute). Moreover, as noted later in this opinion, an employer is entitled to offset any lump sum PPD payments against any TTD benefits later found to be owed. Thus, there will be no double recovery.

## II.

Employer contends next that the Panel erred in failing to apply the $60,000 statutory cap on benefits. We are not persuaded.

## A.

Section 8–42–107.5, C.R.S.2005, which provides for the benefits cap, states in pertinent part that "[n]o claimant whose impairment rating is twenty-five percent or less may receive more than sixty thousand dollars from combined temporary disability payments and permanent partial disability payments." *See Grogan v. Lutheran Med. Ctr., Inc.,* 950 P.2d 690 (Colo.App.1997).

■ The Panel concluded that the DIME physician's finding that claimant had not reached MMI is binding on the parties and the ALJ. Employer has not appealed this aspect of the DIME determination. Thus, because MMI is a predicate to a determination of claimant's medical impairment rating, *see MGM Supply Co. v. Indus. Claim Appeals Office,* 62 P.3d 1001 (Colo.App.2002), and claimant has not yet reached MMI, her permanent impairment rating cannot yet be determined. Accordingly, application of the cap is premature. *See Donald B. Murphy Contractors, Inc. v. Indus. Claim Appeals Office,* 916 P.2d 611 (Colo.App.1995)(because the extent of a claimant's impairment cannot be determined before a claimant reaches MMI, application of the cap is precluded until MMI has been attained and an impairment rating has been assigned); *cf. Rogan v. Indus. Claim Appeals Office,* 91 P.3d 414 (Colo.App.2003)(because the claimant eventually reached MMI, received a permanent impairment rating of less than twenty-five percent, and had been paid $60,000 in combined TTD and PPD benefits, he was not entitled to additional TTD benefits even though the initial MMI determination was erroneous and the impairment rating was premature); *Grogan v. Lutheran Med. Ctr., Inc., supra* (cap was applicable where the claimant's medical condition had stabilized and her medical impairment rating had been determined at a level implicating the cap).

We are not persuaded otherwise by employer's argument that application of the cap after a claimant reaches MMI results in overpayments to claimants that cannot be recouped by employers. We note that the decision in *Donald B. Murphy Contractors, Inc. v. Industrial Claim Appeals Office, supra,* was reached by applying the plain language of the statute, which clearly provides that application of the benefits cap depends on the impairment rating. Accordingly, it is equally clear that the General Assembly intended to require employers to continue paying benefits without application of the cap until such time as a claimant reaches MMI.

Again, while we appreciate that this poses a legitimate and frustrating problem for employers, we have no authority to remedy that problem. *See Kraus v. Artcraft Sign Co., supra.* The intent of the General Assembly in drafting the statute is clear, and it is for that body to consider any changes.

We note that employer filed a request to take judicial notice of the director's practice ·of applying the benefits cap only after permanent impairment is determined, and that to date, claimant has been paid amounts exceeding the $60,000 cap that will apply if she is ultimately assigned a permanent impairment rating of twenty-five percent or less.

This motion was initially denied by the motions division of this court with leave to reconsider by this three-judge division deciding the appeal.

We decline to reconsider that denial because whether the director follows the law is not an appropriate subject for judicial notice. *See One Hour Cleaners v. Indus. Claim Appeals Office, supra.* Furthermore, the amount of benefits a claimant receives prior to reaching MMI is not dispositive, because until a claimant actually reaches MMI, the impairment rating is unknown and any speculation as to the applicable cap is unwarranted.

In light of this conclusion, the Panel's motion to strike employer's request to take judicial notice of these matters is denied.

### B.

Although we agree that the Panel correctly determined that application of the cap was premature, we disagree with the Panel's conclusion that employer waived the argument by failing to plead it.

■ The Panel concluded that the cap was an affirmative defense that must be pleaded and proved. In characterizing the cap as an affirmative defense, the Panel cited *Safeway, Inc. v. Industrial Claim Appeals Office,* 968 P.2d 162 (Colo.App.1998). That case involved an offset for PPD benefits previously paid, and correctly characterized an offset as an affirmative defense. However, we agree with employer that a cap is not akin to an offset and does not constitute an affirmative defense.

Offsets provided by the Workers' Compensation Act operate to prevent a windfall of duplicative disability benefits. *See Culver v. Ace Elec.,* 971 P.2d 641 (Colo.1999)(offset for retirement benefits); *Pace Membership Warehouse v. Axelson,* 938 P.2d 504 (Colo.1997)(offset for unemployment insurance benefits); *L.E.L. Constr. v. Goode,* 867 P.2d 875 (Colo.1994) (offset for federal Social Security mother's benefits); *Johnson v. Indus. Comm'n, supra* (offset for Social Security Disability Insurance benefits); *Myers v. State,* 162 Colo. 435, 428 P.2d 83 (1967)(offset for disability annuity).

In contrast, a benefits cap is simply a component in the computation of benefits, much as limitations on the average weekly wage (AWW) affect the computation of benefits. *See Guido v. Indus. Claim Appeals Office,* 100 P.3d 575 (Colo.App.2004)(§ 8–42–105(1), C.R.S.2005, provides that maximum TTD rate is ninety-one percent of the state AWW, and is used to compute benefits); *Salazar v. Indus. Claim Appeals Office,* 10 P.3d 666, 667 (Colo.App.2000)(taken together, §§ 8–42–111(1) and 8–42–105(1), C.R.S.2005, which limit benefits to a percentage of the AWW, "form the benefit cap for [permanent total disability] benefits"); *City of Thornton v. Replogle,* 873 P.2d 30 (Colo.App.1993)(§ 8–41–301(2)(b), C.R.S.2005, which provides that benefits for mental impairment, which are limited to twelve weeks in an amount not less than $150 per week and not more than fifty percent of the state AWW, is an offset, rather than a cap), *aff'd,* 888 P.2d 782 (Colo.1995); *see also Culver v. Ace Elec.,* 952 P.2d 1200, 1205 (Colo.App.1997)("an age cap is conceptually different from an offset"), *aff'd,* 971 P.2d 641 (Colo.1999).

Application of the statutes necessary to correctly compute benefits is automatic, and because the benefits cap here is not an affirmative defense, it need not be affirmatively pleaded unless a specific issue arises as to its application. *Cf. Kersting v. Indus. Comm'n,* 39 Colo.App. 297, 567 P.2d 394 (1977)(failure to raise statute of limitations constituted a waiver, because the statute of limitations is an affirmative defense).

Accordingly, because this issue may arise in the future, we conclude that employer is not barred from raising the cap once claimant reaches MMI.

### C.

We note that employer also asserts that it is entitled to an offset for unemployment compensation benefits claimant received, as well as credit for PPD benefits already paid. Claimant acknowledges that employer may offset the premature PPD lump sum against any TTD benefits. Because the ALJ already ordered that claimant's TTD benefits are "subject to offset as allowed under the

[Workers' Compensation] Act," and there appears to be no dispute as to this issue, it is unnecessary to address this contention.

### III.

Employer's final contention is that the Panel erred in concluding that claimant's shoulder injury was related to the February 2001 elbow injury and therefore was compensable. Again, we disagree with employer's various arguments relating to this issue.

### A.

■ Employer argues that the DIME physician never actually found a causal link between claimant's shoulder injury and the industrial elbow injury, and the ALJ erred in interpreting the DIME physician's report in a contrary manner. Alternatively, employer argues that even if the DIME physician found causation, because the shoulder injury was not symptomatic until five months after claimant was terminated from her employment in 2002, the ALJ erred in relying on the DIME physician's finding that it was work related, and instead should have relied on the ATP's contrary finding.

However, the Panel found, and we agree, that the ALJ correctly ruled that employer is bound by the DIME physician's report because it failed to contest the findings.

Section 8–42–107.2(4) provides that within thirty days after the DIME physician's report is mailed, the insurer "shall either file its admission of liability pursuant to section 8–43–203[, C.R.S.2005,] or request a hearing before the division contesting one or more of the IME's findings or determinations contained in such report." Section 8–43–203(2)(b)(II) reiterates this provision and specifies the notice requirements involved with the DIME process.

Both sections are part of an overall statutory scheme designed to ensure the prompt payment of benefits without the necessity of litigation in cases that do not present a legitimate controversy. *See Peregoy v. Indus. Claim Appeals Office, supra.* The provisions of this statute are clear and require the insurer either to contest the DIME report within thirty days or to admit in accordance

with the report. *City Mkt., Inc. v. Indus. Claim Appeals Office,* 68 P.3d 601 (Colo.App.2003)(upholding the imposition of penalties for employer's failure to either contest or admit to the DIME report). Just as an ALJ lacks jurisdiction, without a DIME, to resolve a dispute concerning an ATP's finding of MMI, *Town of Ignacio v. Indus. Claim Appeals Office,* 70 P.3d 513 (Colo.App. 2002), the ALJ also lacks jurisdiction, absent an objection to the DIME physician's findings, to resolve a dispute as to those findings. *See Schneider Nat'l Carriers, Inc. v. Indus. Claim Appeals Office,* 969 P.2d 817 (Colo.App.1998)(because filing requirements are jurisdictional, statutory provisions governing such requirements must be strictly construed).

Here, the ALJ found, and employer does not dispute, that it failed to request a hearing to contest the DIME physician's report finding that claimant was not at MMI. The DIME physician's determination is therefore binding on the parties and the ALJ because employer did not timely act to contest it. Accordingly, jurisdiction to hear such a contest has now been lost.

### B.

Nevertheless, employer seeks to avoid the finality of the DIME physician's opinion regarding MMI by arguing that the issue was compensability of the shoulder condition, rather than causation, and therefore the DIME process does not apply to claimant's shoulder injury. Employer also asserts that because the DIME physician found that claimant was not at MMI, the rating was purely advisory and the related causation determination is immaterial. These arguments are not persuasive.

■ As required by § 8–42–107(8), C.R.S. 2005, a DIME physician's opinions concerning MMI and permanent medical impairment are given presumptive effect. Both determinations inherently require the DIME physician to assess, as a matter of diagnosis, whether the various components of the claimant's medical condition are causally related to the industrial injury. Therefore, a DIME physician's determinations concerning causa-

tion are binding unless overcome by clear and convincing evidence. *Cordova v. Indus. Claim Appeals Office,* 55 P.3d 186 (Colo.App. 2002).

■ In contrast, the threshold question of whether the claimant has sustained a compensable injury in the first instance is one of fact that the ALJ must determine, if contested, under the preponderance of the evidence standard. *Pacesetter Corp. v. Collett,* 33 P.3d 1230 (Colo.App.2001). Consequently, the DIME physician's opinion on this issue is not entitled to special or presumptive weight. *Faulkner v. Indus. Claim Appeals Office,* 12 P.3d 844 (Colo.App.2000).

Here, unlike the situation in *Faulkner, supra,* the existence of a compensable injury is not in question. Indeed, employer admitted, in the general admission of liability, that claimant sustained a compensable injury in February 2001. The issue presented to the DIME physician and later to the ALJ was the *extent* of this injury, and whether claimant needed additional diagnostic and curative procedures to diagnose and relieve the effects of the admitted injury.

As the ALJ recognized, the DIME physician squarely addressed these questions and determined that claimant's shoulder problem was probably related to the industrial injury and claimant needed additional diagnostic and curative treatment to relieve this condition. Therefore, the issue of the cause of claimant's shoulder symptoms was properly before the DIME physician, and his opinions on the causation issue became binding because of employer's failure to challenge them. Given the DIME physician's recognition that the rating was premature, we attach no particular significance to the issuance of an "advisory" rating, and conclude that it does not affect the causation determination.

That portion of the Panel's order determining that employer waived application of the benefits cap is set aside. The remainder of the Panel's order is affirmed.

Judge PICCONE concurs.

Judge DAILEY dissents.

Judge DAILEY dissenting.

I disagree with the majority's determination that claimant's request for and receipt of a lump sum payment of PPD benefits did not preclude her from subsequently disputing the FAL, requesting a DIME, and seeking payment of TTD benefits.

The majority's opinion is based, in large part, upon one premise (namely, that claimant had to knowingly and intelligently waive her rights to dispute the FAL and request a DIME) and one fact (namely, that, unlike the case involving larger lump sum payments authorized by the director, claimant was not explicitly advised that she was accepting the FAL by applying for the lump sum).

The majority correctly cites *Johnson v. Industrial Commission,* 761 P.2d 1140, 1147 (Colo.1988), for the proposition that waiver involves the intentional relinquishment of a known right. However, that articulation of the waiver standard is very close to, if not the same as, that used in determining a waiver of fundamental constitutional rights. *See People v. Sevigny,* 679 P.2d 1070, 1075 (Colo.1984)(standard for assessing waiver of "basic constitutional rights": "an intentional relinquishment or abandonment of a right or privilege adequately understood by the defendant"); *People v. Curtis,* 681 P.2d 504, 514 (Colo.1984) ("Waiver of a fundamental right must be voluntary, knowing and intentional.").

The present case does not involve a waiver of constitutional rights. The waiver at issue here—of the right to challenge MMI by contesting the FAL and seeking a DIME—is statutory in nature.

The waiver of a statutory right "must be voluntary but need not be knowing and intelligent." *People v. Duran,* 757 P.2d 1096, 1097 (Colo.App.1988); *see also Padilla v. D.E. Frey & Co.,* 939 P.2d 475, 478 (Colo. App.1997) ("statutory rights may be waived so long as the waiver is performed voluntarily"); *First Interstate Bank v. Cent. Bank,* 937 P.2d 855, 861 (Colo.App.1996)("In general, both substantive and procedural statutory rights may be waived so long as the waiver is voluntary.").

The *Johnson* decision should not be read as contrary to these authorities. Indeed, in *Johnson,* the supreme court noted that a waiver could be explicit or implied. An implied waiver occurs "when a party engages in conduct which manifests an intent to relinquish the right or privilege *or acts inconsistently with its assertion." Johnson v. Indus. Comm'n, supra,* 761 P.2d at 1147 (emphasis added); *see First Christian Assembly of God v. City & County of Denver,* 122 P.3d 1089, (Colo.App.2005)("A party's actions inconsistent with a right may constitute a waiver of that right."); *cf. Horton v. Suthers,* 43 P.3d 611, 618 (Colo.2002)(estoppel and invited error doctrines preclude parties from taking positions inconsistent with those initially taken).

In my view, a request for and acceptance of a lump sum payment of PPD benefits is antithetical to a further request for a DIME to challenge the prior MMI determination that was the basis for obtaining PPD benefits.

Under the Workers' Compensation Act, MMI marks the point at which PPD benefits become available and TTD benefits become unavailable. *See* §§ 8–42–105(3)(a), 8–42–107(8)(c), C.R.S.2005; *Culver v. Ace Elec.,* 971 P.2d 641, 652 (Colo.1999).

Logically and legally, then, there can be no determination or payment of PPD benefits until and unless MMI is reached. *See MGM Supply Co. v. Indus. Claim Appeals Office,* 62 P.3d 1001, 1005 (Colo.App.2002)("Evaluation for permanent disability cannot precede the determination that the claimant has reached MMI.").

The lump sum paid to claimant here is a form of PPD benefit. *See Cooper v. Indus. Claim Appeals Office,* 109 P.3d 1056, 1057–58 (Colo.App.2005).

Consequently, the effect of the majority's decision is to allow claimant to keep PPD benefits while seeking TTD benefits. In my view, she cannot do both, regardless of whether she was so advised. Thus, I would hold that, having requested and accepted the PPD benefits, claimant voluntarily waived, or at least is estopped from asserting, her right

to obtain TTD benefits through the DIME process. *See Brunetti v. Indus. Comm'n,* 670 P.2d 1246, 1248 (Colo.App.1983)("the claimant himself precipitated the closing of his claim by requesting a lump sum settlement," and "the claim was closed upon payment of the settlement"); *see also Hanna v. Print Expediters Inc.,* 77 P.3d 863, 866–67 (Colo. App.2003) (employee who had already received an award of PPD benefits was estopped from requesting subsequent medical treatment).

For these reasons, I respectfully dissent.