25CA0107 Mosley-Stichter v ICAO 11-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0107
Industrial Claim Appeals Office of the State of Colorado
WC No. 5-178-127

---

Cherise M. Mosley-Stichter,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado, Denver Public Schools, and PMA Management Group,

Respondents.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE LUM
Tow and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 6, 2025

---

Cherise M. Mosley-Stichter, Pro Se

No Appearance for Respondent Industrial Claim Appeals Office

Ritsema Law, LLC, Alana McKenna, Denver, Colorado, for Respondents Denver Public Schools and PMA Management Group

¶ 1    In this worker's compensation action, Cherise M. Mosley-Stichter seeks review of an order denying her requests for certain benefits.  We affirm.

## I.    Background

¶ 2    Mosley-Stichter worked for Denver Public Schools (Employer) as a paraprofessional.  On February 17, 2021, she suffered a work injury to her right knee when she knelt to assist a student.  A few days later, Authorized Treating Physician (ATP) Jay Reinsma, M.D., diagnosed a right knee strain, prescribed physical therapy, and assigned her work restrictions to accommodate healing.  When Mosley-Stichter returned for a follow-up visit on March 1, 2021, she reported no pain, and Dr. Reinsma determined she had reached maximum medical improvement (MMI), lifted her work restrictions, and released her from care.

¶ 3    However, Dr. Reinsma revoked his MMI determination when Mosley-Stichter returned to his clinic on March 19, 2021, reporting a resurgence of pain.  At that visit, Mosley-Stichter explained that she had been pain free between March 1 and March 16, when she knelt to change a student's diaper and felt her right knee "pop."  Dr.

Reinsma ordered magnetic resonance imaging (MRI) of Mosley-Stichter's knee.

¶ 4     Mosley-Stichter's MRI images showed a mild acute or subacute MCL sprain and osteoarthritis. She returned to Dr. Reinsma multiple times in April 2021, with varying degrees of pain and mobility. In May, Dr. Reinsma referred her to physiatrist, Dr. Fredric Zimmerman, D.O., to explore a possible injection.

### A. June 2021: Impairment Ratings and MMI

¶ 5     Dr. Zimmerman examined Mosley-Stichter on June 22, 2021. He diagnosed her with a right knee strain and mild chondromalacia/osteoarthritis of the knee joint, which he found her work injury had exacerbated. Dr. Zimmerman also determined that Mosley-Stichter had reached maximum medical improvement (MMI). For compensation purposes, Dr. Zimmerman found that Mosley-Stichter suffered permanent impairment to her "lower extremity" in the form of limited range of motion and limited mobility from chondromalacia.[1] Specifically, Dr. Zimmerman found that Mosley-Stichter's constricted range of motion impaired her

---

[1] "Chondromalacia" describes "abnormal softness of cartilage." Merriam-Webster Dictionary, https://perma.cc/7F3S-U8AP.

lower extremity use by 8% and that her chondromalacia impaired her lower extremity use by 5%. Combining the two, Dr. Zimmerman found that Mosley-Stichter suffered a 13% lower extremity impairment, which converted to a 5% "whole-person" impairment. He prescribed a steroid injection in her right knee and a patellar support strap.

¶ 6 Mosley-Stichter soon returned to Dr. Reinsma for a follow-up appointment. Dr. Reinsma agreed that she had reached MMI and agreed with Dr. Zimmerman's impairment rating.

¶ 7 Dr. Zimmerman administered a steroid injection to Mosley-Stichter's right knee in August 2021, but she found it ineffective. Dr. Reinsma ordered additional electronic imaging.

¶ 8 The following month, Mosley-Stichter reported to Dr. Reinsma that she reinjured her knee on September 23, 2021, while restraining a student at work.[2] Per Dr. Reinsma's orders, Mosley-

---

[2] We note that the record in related case number 25CA0994 reflects that Mosley-Stichter filed a workers' compensation claim specifically for this injury over two years later, on December 15, 2023. *See Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 64 (we may take judicial notice of the contents of court files in related proceedings). However, at all times relevant to this case, this injury was treated under the umbrella of her February 2021 injury.

Stichter underwent a second MRI on September 30, 2021. Dr. Reinsma noted the imaging showed degenerative changes but no acute injuries.

¶ 9    In December 2021, Mosley-Stichter received an injection of a different medication (Synvisc) from Dr. Zimmerman but found it ineffective. The only other treatment Dr. Zimmerman could offer conflicted with Mosley-Stichter's religious practice, so she refused it. Dr. Zimmerman referred her to an orthopedic surgeon for additional treatment options.

¶ 10    Mosley-Stichter met with orthopedic surgeon Dr. Mark Failinger, M.D., that month. Dr. Failinger acknowledged that Mosley-Stichter's treatment "options [were] running out[,]" and he determined that orthopedic surgery was unlikely to alleviate Mosley-Stichter's symptoms. He suggested that the Synvisc injection could still prove effective within the next few weeks.

¶ 11    Mosley-Stichter returned to Dr. Zimmerman in February 2022, reporting no relief in her symptoms. He determined that "there [was] nothing further to offer" her in the way of treatment and released her from care. Dr. Zimmerman also noted that Mosley-

Stichter had, at that point, been diagnosed with "[a]djustment disorder/depression."

¶ 12   Dr. Reinsma similarly released Mosley-Stichter from care in March 2022, agreeing that no further treatment options remained. Mosley-Stichter saw Dr. Reinsma again in July 2022 for medication management; in his notes from that appointment, Dr. Reinsma remarks that Mosley-Stichter reached MMI on June 22, 2021.

   B.   Division-sponsored Independent Medical Exam (DIME)

¶ 13   Mosley-Stichter underwent a DIME with Justin Green, M.D., in August 2022. After reviewing Mosley-Stichter's medical records and conducting a physical exam, Dr. Green opined, "I would place the claimant at MMI on 6/22/2021, the date of Dr. Zimmerman's final report." He further agreed with Dr. Zimmerman's (and Dr. Reinsma's) assessment that Mosley-Stichter's decreased range of motion and chondromalacia rendered her lower extremity use 13% impaired. Dr. Green prescribed maintenance care of two to three doctor's appointments over the next year for medication management and patellar strap replacement.

¶ 14   Employer filed a final admission of liability in October 2022. Consistent with Dr. Green's report, Employer acknowledged liability

for the 13% lower extremity impairment, plus medical maintenance benefits. Mosley-Stichter requested a hearing from the Office of Administrative Courts.

## C. Agency Review

¶ 15    After the requested hearing, the presiding administrative law judge (ALJ) determined, as relevant here, that Mosley-Stichter failed to (1) overcome Dr. Green's opinion that she reached MMI on June 22, 2021, and that she was entitled to a lower extremity impairment rating of only 13%; (2) prove that she required additional medical maintenance benefits; and (3) prove that she was entitled to receive additional indemnity benefits. The ALJ also denied Mosley-Stichter's request for a change of physician because she hadn't timely filed her request. The Panel affirmed the ALJ's order.

## II. Discussion

¶ 16    As we understand her arguments, Mosley-Stichter contends that the Panel erred by affirming the ALJ's order because (1) Dr. Green never actually opined on her MMI date; (2) to the extent Dr. Green identified June 22, 2021, as her MMI date, he erred in doing so; (3) her compensable injuries extend beyond the scheduled injury to her right knee; (4) her impairment merits a higher rating; and

6

(5) she requires additional medical maintenance benefits. We consider, and reject, each of her arguments in turn.

## A. Standard of Review

¶ 17 Under section 8-43-308, C.R.S. 2025, we may not disturb the ALJ's factual findings where "supported by substantial evidence," and we may only set aside the Panel's decision if (1) the factual findings (as adopted by the Panel) are not sufficient to permit appellate review; (2) conflicts in the evidence are not resolved in the record; (3) the factual findings do not support the order; or (4) the award or denial of benefits is not supported by applicable law.

## B. MMI

¶ 18 Mosley-Stichter argues that Dr. Green "only noted that he 'WOULD' place [Mosley-Stichter] at MMI on the day of Dr. Zimmerman's final report." We construe this as an argument that Dr. Green never affirmatively determined the date she reached MMI. However, Mosley-Stichter provides no analysis regarding what the word "would" signifies or how it renders Dr. Green's MMI determination incomplete or ineffective. And we are not persuaded that it does.

¶ 19     In an attachment to his report, Dr. Green directly states that "the claimant reached MMI on 6/22/21." As well, Dr. Green uses the term "would" throughout his report, including when determining permanent impairment and work restrictions — findings the applicable regulations required that he make. Div. of Workers' Comp. Rule 11-2(K), 7 Code Colo. Regs. 1101-3; *see Bolser v. Bd. of Comm'rs*, 100 P.3d 51, 53 (Colo. App. 2004) (appellate court interprets written documents de novo, viewing individual terms in the context of the entire document). We conclude Dr. Green's use of the term "would" in his report merely reflects a stylistic choice, rather than a substantive limitation of his findings.

¶ 20     Alternatively, Mosley-Stichter appears to contend that the ALJ erred by affirming Dr. Green's determination that Mosley-Stichter reached MMI on June 22, 2021. Mosley-Stichter argues that evidence of the following sufficed to overcome Dr. Green's opinion: after June 22, 2021, other physicians (1) found that Mosley-Stichter "was not healing"; (2) found that Mosley-Stichter "needed further treatment"; and (3) "diagnosed additional conditions[.]"

¶ 21     To the extent Mosley-Stichter argues any of the foregoing precluded a June 22, 2021, MMI date as a matter of law, her

argument fails. First, healing is not a prerequisite to reaching MMI. To the contrary, MMI occurs when impairment "has become stable and when no further treatment is reasonably expected to improve the condition." § 8-40-201(11.5), C.R.S. 2025. Section 8-40-201(11.5) plainly does not contemplate healing as a component of reaching MMI, as it expressly states that "[t]he requirement for future medical maintenance which will not significantly improve the condition or the possibility of improvement or deterioration resulting from the passage of time shall not affect a finding of maximum medical improvement." *Id.* In other words, a claimant whose injury has not fully healed and requires additional medical treatment to maintain the level of healing achieved may nonetheless have reached MMI. *See id.*

¶ 22 Second, we perceive no reason why a physician would be foreclosed from retroactively determining that MMI occurred before a given course of treatment which failed to improve the claimant's condition. Mosley-Stichter cites no authority for this proposition, and we decline to further consider this argument. *See Vallagio at Inverness Residential Condo. Ass'n, Inc. v. Metro. Homes, Inc.*, 2017

9

CO 69, ¶¶ 39-40 (the court will not consider conclusory propositions devoid of legal citations or analysis).

¶ 23   Third, that Mosley-Stichter received additional diagnoses after June 22, 2021, does not render Dr. Green's MMI determination incorrect as a matter of law. Mosley-Stichter correctly notes that a claimant only reaches MMI when all conditions related to the workplace injury reach maximum improvement. *See Paint Connection Plus v. Indus. Claim Appeals Off.*, 240 P.3d 429, 433 (Colo. App. 2010). However, she points to no evidence that her post-June 2021 "diagnoses," including "guarding and inhibition," depression, and adjustment disorder were conditions arising from her workplace injury. And, importantly, because Mosley-Stichter didn't designate a hearing transcript, we presume the evidence presented at the hearing supports the ALJ's conclusion that she failed to overcome Dr. Green's physician's MMI determination. *See* § 8-43-301(2)(b), C.R.S. 2025 (requiring the appellant to order a hearing transcript in connection with an appeal); *Nova v. Indus. Claim Appeals Off.*, 754 P.2d 800, 801 (Colo. App. 1988).

¶ 24   To the extent Mosley-Stichter argues that she met her evidentiary burden to overcome Dr. Green's MMI opinion, that

argument fares no better.  A DIME physician's MMI determination is binding unless overcome by clear and convincing evidence.  § 8-42-107(8)(b)(III), C.R.S. 2025; *Meza v. Indus. Claim Appeals Off.*, 2013 COA 71, ¶ 15.  "In contrast to the preponderance of evidence standard — which only requires proof that a fact is more probable than not — the clear and convincing standard requires proof that a fact is highly probable and free from serious or substantial doubt." *Creekside Endodontics, LLC v. Sullivan*, 2022 COA 145, ¶ 36 (citation modified).  Whether the DIME physician's MMI determination has been overcome by clear and convincing evidence is an issue of fact for the ALJ to determine.  *Wackenhut Corp. v. Indus. Claim Appeals Off.*, 17 P.3d 202, 204 (Colo. App. 2000).

¶ 25    Mosley-Stichter points out that, on September 17, 2021, Dr. Reinsma rescinded his MMI finding and that, thereafter, Mosley-Stichter received additional treatment, including "injections, physical therapy, and psychotherapy[.]"  But the mere fact that Dr. Reinsma initially rescinded his MMI finding in September to pursue additional treatment options doesn't necessarily undermine Dr. Green's MMI determination.  Indeed, after observing that no treatment administered after June 2021 proved effective in

11

improving Mosley-Stichter's condition, Dr. Reinsma ultimately reinstated June 22, 2021, as her MMI date.

¶ 26     We note, as the Panel and ALJ did, that all of the physicians who opined on MMI — specifically, Drs. Reinsma, Zimmerman, and Green — ultimately unanimously agreed that Mosley-Stichter reached MMI on June 22, 2021.  No medical opinion in the record even suggested that Dr. Green had erred in this finding.  The ALJ also found that Mosley-Stichter's "arguments regarding typographical errors related to dates of reports, dates of injuries, or minor discrepancies within the DIME do not satisfy the clear and convincing evidentiary standard to establish that Dr. Green's opinion was clearly erroneous."  We will not second-guess the ALJ's assessment of the evidence's persuasive value.  *See Metro Moving & Storage, Co. v. Gussert*, 914 P.2d 411, 414-15 (Colo. App. 1995).  We see no reason to disturb the ALJ's conclusion — or the Panel's decision upholding it — that Mosley-Stichter failed to overcome Dr. Green's MMI determination by clear and convincing evidence.[3]

---

[3] Mosley-Stichter also seemingly argues that she is entitled to ongoing temporary disability benefits.  However, because this argument is premised on her contention that she has not yet reached MMI, and because we find that the ALJ and Panel correctly

## C. Scheduled Injury

¶ 27 Under section 8-42-107, a claimant's permanent disability compensation depends on whether they suffer a "scheduled" or "non-scheduled" impairment. *See Dillard v. Indus. Claim Appeals Off.*, 121 P.3d 301, 304 (Colo. App. 2005). Subsection (2) of the statute lists thirty-eight specific impairments (the "schedule"), describing each impairment in terms of a claimant's "loss" of a particular body part or sense. § 8-42-107(2). It then assigns each loss a compensatory value. *Id.* Subsection (7)(b)(II) provides that full or partial "loss of use" of any enumerated body part qualifies as a "schedule[d]" impairment, compensable proportionate to the degree of loss. § 8-42-107(7)(b)(II). On the other hand, a claimant suffering an impairment not enumerated in section 8-42-107(2) may receive whole-person impairment benefits under section 8-42-107(8).

¶ 28 Whether a claimant suffers a scheduled impairment is a factual question for the ALJ, whose determination must be upheld if

---

found that Mosley-Stichter failed to overcome the DIME physician's opinion as to her MMI date, we do not consider her argument regarding temporary disability benefits.

13

supported by substantial evidence. *City Market, Inc. v. Indus. Claim Appeals Off.*, 68 P.3d 601, 603-04 (Colo. App. 2003). That general determination is distinct from the treating physician's specific rating of the degree of physical impairment under the revised third edition of the American Medical Association Guides to the Evaluation of Permanent Impairment (AMA Guides). §§ 8-42-101(3.7), 8-42-107(8)(c); *Strauch v. PSL Swedish Healthcare Sys.*, 917 P.2d 366, 368 (Colo. App. 1996). An ALJ cannot determine the degree of impairment absent supporting evidence from a Level II-accredited physician. §§ 8-42-101(3.6)(b), 8-42-107(8)(c); *see Destination Maternity v. Burren*, 2020 CO 41, ¶¶ 41, 46 (noting that only Level II-accredited physicians may provide impairment ratings and that an impairment rating is a question of fact for the ALJ to resolve based on the medical evidence).

¶ 29 The ALJ concluded that Mosley-Stichter suffered a 13% impairment to her right lower extremity stemming from the knee injury (a scheduled impairment). Mosley-Stichter contends that she suffered "a more serious" impairment extending to other "parts of her body" beyond the right knee. We construe this as an argument that she also suffered a non-scheduled impairment and that the

14

ALJ erred by failing to find the impairment and compensate her for it.

¶ 30    We observe that some record evidence could have supported a finding that Mosley-Stichter suffered non-scheduled, psychiatric impairment, in the form of her diagnosed depression and/or adjustment disorder.  But even if the ALJ erred by failing to make findings about that impairment, including whether it was scheduled or non-scheduled, any error was harmless because the record does not include sufficient evidence to support a benefits award for psychiatric impairment.

¶ 31    An ALJ may only award benefits for psychiatric impairment where, among other requirements, a Level II-accredited physician provides an impairment rating specific to the psychiatric impairment. Div. of Workers' Comp. Rule 12-5(D), 7 Code Colo. Regs. 1101-3; § 8-42-107(8)(c).  Here, the record includes no evidence of such impairment rating.  Because no evidence would have supported an award of benefits for psychiatric impairment, or, indeed, impairment of any body part beyond Mosley-Stichter's right leg, Mosley-Stichter was not entitled to receive benefits for impairment to any other body part.

¶ 32    To the extent Mosley-Stichter argues that the ALJ erred by granting her only a 13% lower extremity impairment, as opposed to a greater impairment rating, this argument likewise fails.  As discussed above, an ALJ's determination of an impairment rating requires record support from a Level II-accredited physician.  §§ 8-42-101(3.6)(b), 8-42-107(8)(c); *see Destination Maternity*, ¶ 41. Mosley-Stichter points to no evidence supporting a higher impairment rating, and we find none in the record before us.

## D.    Medical Maintenance

¶ 33    Mosley-Stichter next argues that "it is reasonably necessary" that she "receive continuing medical maintenance treatment." While Mosley-Stichter does not appear to dispute the ALJ's finding that she has received "significant medical maintenance treatment," she seemingly requests additional unspecified treatment to relieve ongoing "mental[], physical[], financial[], and emotional[]" symptoms.  In particular, Mosley-Stichter asserts that she is entitled to relief from certain medications' side effects.  We perceive no basis to reverse the Panel's order.

¶ 34    A claimant seeking additional medical maintenance benefits bears the burden of establishing, by a preponderance of evidence,

16

that such benefits are reasonably necessary to relieve the claimant of ongoing symptoms related to the work injury and to prevent the claimant's condition from deteriorating. *Grover v. Indus. Comm'n,* 759 P.2d 705, 710-13 (Colo. 1988). Though Mosely-Stichter contends certain hearing testimony supports her request for additional benefits, we must presume the ALJ correctly found that the preponderance of the evidence did not merit an award of additional maintenance benefits because Mosley-Stichter didn't designate a hearing transcript as part of the record on appeal. *See* § 8-43-301(2)(b) (requiring the appellant to order a hearing transcript in connection with an appeal); *Nova,* 754 P.2d at 801. Additionally, Mosley-Stichter fails to direct us to any documentation included in the record that would support her request for additional maintenance benefits. *See People v. Walters,* 821 P.2d 887, 889 (Colo. App. 1991) (noting that it is an appellant's obligation to "set out the part of the record supporting his contentions of error").

### E. Change of Physician

¶ 35 Finally, Mosley-Stichter asserts that she "was never given an opportunity to request a change of physician." However, she identifies no specific error in the ALJ's or Panel's orders on this

issue, and it is unclear what relief she seeks. Regardless, as the ALJ and Panel noted, section 8-43-404(5)(a)(III), C.R.S. 2025, only allows a claimant to request a change of physician within ninety days after the injury occurs. It is undisputed that Mosley-Stichter did not request a change of physician within ninety days after the February 2021 injury. Mosley-Stichter argues that she did not have time to request a change, as Dr. Reinsma initially placed her at MMI on March 1, 2021. But Mosley-Stichter provides no legal authority supporting her argument that a physician's finding of MMI during the first ninety days of treatment precludes a claimant from requesting a change of physician, and we are aware of no such authority. *See Middlemist v. BDO Seidman, LLP*, 958 P.2d 486, 495 (Colo. App. 1997) (noting the appellant's obligation to identify specific errors and legal authorities supporting reversal). Moreover, Dr. Reinsma revoked the MMI date several days later, and Mosley-Stichter continued her treatment under his care well past the ninety-day mark, without requesting a change of physician. In sum, to the extent Mosley-Stichter requests relief on this issue, we perceive no basis to grant any.

### III. Disposition

¶ 36 We affirm the Panel's order.

JUDGE TOW and JUDGE MOULTRIE concur.